COURTNEY HUDSON GOODSON, Associate Justice | ]The resolution of this appeal, involving a challenge to the constitutionality of this State’s judicial-retirement statutes, confirms the future identity and character of our judiciary. By this opinion, we join the unanimous voice of the courts in this country, including the United States Supreme Court, which- hold -that judicial-retirement provisions are constitutional. Appellants, Judges Michael Lan-ders, David Guthrie, Kenneth Johnson, and J.W. Looney, appeal the order entered by the Pulaski County Circuit Court granting summary judgment in favor of appel-lees Gail Stone/ Executive Director of the Arkansas Judicial | ^Retirement System; Judge Robert Edwards, its Chairman; and Judges Gayle Ford, Mark Hewett, Charles Yeargan, and Marcia Hearnsberger, who are members of the system’s board of trustees. In the order granting summary judgment, the circuit court rejected appellants’ arguments contesting the forfeiture provisions found in Arkansas Code Annotated sections 24-8-215 and 24-8-710 (Repl.2014) that pertain to the Arkansas Judicial Retirement System. . For reversal, appellants contend that (1) the forfeiture provisions constitute an additional qualification for holding judicial office in violation of the Arkansas Constitution; (2) the statutes violate their rights of equal protection -under the law; (3) the statutes appear to provide for an unconstitutional taking without due process of law; and (4) the provisions operate to constructively discharge judges. We affirm the circuit court’s decision. I. Factual Background The General Assembly established the Arkansas Judicial Retirement System sixty-three years ago with the passage of Act 365 of 1953, which is presently codified at Arkansas Code Annotated sections 24-8-201 et seq. (Repl.2014). With its enactment, the General Assembly declared that “it is the public policy of the state to provide sufficient retirement and survivors’ benefits” for judges and justices “to attract and retain highly capable members of the legal profession for service in the state judiciary.” Ark. Code Ann. § 24-8-201. According to the legislative scheme, participation in the plan is mandatory, and • each judge and justice covered by the plan contributes a percentage of their annual salary into the retirement system. See Ark. Code Ann. §§ 24-8-207(a), 24-8-209(a) & 24-8-706(a). By and large, eligibility for the receipt of retirement benefits 'is based on years of service, which is set at a minimum of eight years. Ark. Code Ann. § 24-8-215(d). The controversy in this pease concerns the laws providing that any judge who is vested in the judicial retirement system forfeits his or her retirement benefits if the judge runs for, is elected to, and serves in a new term of office after reaching the age of seventy. See Ark. Code Ann. §§ 24-8-215(c) & 24-8-710(b). Three of the appellants are current members of the Arkansas judiciary, while one has retired from the bench. Judge Landers is a circuit judge in the Thirteenth Judicial District, and he was reelected in 2010 for an additional six-year term that expires at the close of 2016. Judge Guthrie is currently serving as a circuit judge in the Thirteenth Judicial District, and he was reelected in 2014 to a six-year term ending in 2020. Similarly. Judge Johnson is a circuit judge who sits in the Tenth Judicial District and was reelected in 2014 for a six-year term that will expire in 2020. Judge Looney is retired from his position as a circuit judge in the Eighteenth Judicial District. Appellants joined in filing a complaint for declaratory judgment seeking a determination that sections 24-8-215(c) and 24-8-710(b) are unconstitutional and are otherwise contrary to the law. Appellants alleged that these provisions violate amendment 80 to the Arkansas Constitution by adding a qualification for serving as a judge. They also asserted that the statutes deny them equal protection, as well as due process of law, as a taking without just compensation. Their complaint included the additional claim that the forfeiture provisions effect a constructive discharge from employment. In the complaint, . appellants Landers, Guthrie, and Johnson alleged that they wish to- seek reelection when their terms expire but that they had reached the age that | continued service would result in the forfeiture of their retirement benefits.[1] Appellant Looney avowed that he had wanted to run for reelection but that he chose to retire “because of the chilling effect of the forfeiture statute[s].”[2] As relief, appellants sought an injunction to prohibit the enforcement of the statutes. Appellees responded to the complaint and subsequently moved for summary judgment, asserting that there were no material facts in dispute and that the contested issues involved questions of law. In their motion, they first argued that appellants did not have standing to mount a challenge to the statutes and that their claims were not ripe for review. Appellees also contended that they were entitled to judgment as a matter of law. Appellants also moved for summary judgment. They agreed with appellees .that summary disposition was appropriate because the issues raised in their complaint concern purely matters of law. However, appellants disagreed with appellees’ assertion that they did not have standing and that their claims were not ripe for review. After a hearing, the circuit court ruled that appellants had standing to seek declaratory relief but that their claims were not well taken. Accordingly, the circuit court granted appellees’ motion for summary judgment. This appeal followed. II. Standards of Review Generally, on appeal from a summary-judgment disposition, the evidence is viewed in the light most favorable to the party resisting the motion, and any doubts and inferences | ,-are resolved against the moving party. Ark. State Bd. of Election Comm’rs v. Pulaski Cty. Election Comm’n, 2014 Ark. 236, 437 S.W.3d 80. However, when the parties agree on the facts, we simply determine whether -the appellee was entitled to judgment as a matter of law. Waters v. Millsap, 2015 Ark. 272, 465 S.W.3d 851. As to issues of law, our review is de novo. Washington Cty. v. Bd. of Trustees, 2016 Ark. 34, 480 S.W.3d 173. III. Standing In their brief, appellees continue to argue, as they did below, that appellants lack standing to challenge the statutes. Appellees contend that appellants do not have standing and that the issues are not ripe for review because the future applica-' tion of the retirement provisions are contingent on an eligible circuit judge running for election, winning the election, and taking the bench for a new term after reaching the age of seventy. In making this argument, appellees rely on the principle that a declaratory judgment will not be granted unless the danger or dilemma of the plaintiff is present, not contingent on the happening of hypothetical future events; the prejudice to his position must be actual and genuine and not merely possible, speculative, contingent, or remote. See Nelson v. Ark. Rural Med. Practice Loan & Scholarship Bd., 2011 Ark. 491, 385 S.W.3d 762. We treat the question of standing to sue as a threshold issue. Grand Valley Ridge, LLC v. Metro. Nat’l Bank, 2012 Ark. 121, 388 S.W.3d 24. However, this court has held that the issue of standing raised by an appellee is not preserved for appeal in the absence of a cross-appeal. Gallas v. Alexander, 371 Ark. 106, 263 S.W.3d 494 (2007). Here, appellees did not file a cross-appeal to contest the circuit court’s adverse ruling on this point. Consequently, we decline to address this issue. |fiIV. Amendment 80 As their primary point on appeal, appellants contend that sections 24-8-215(c) and 24-8-710(b) violate amendment 80 to the Arkansas Constitution. They argue that the amendment establishes the qualifications for becoming a judge in this state and that the forfeiture provisions of the statutes add an additional age-based qualification by creating a de facto prohibition against retaining office past the age of seventy. Their argument is based on the principle that the General Assembly does not possess the authority to augment the qualifications contained in the constitution. Appellants assert that, by exacting a penalty on their constitutional eligibility to serve, the laws indirectly accomplish what the General Assembly lacks the direct authority to do. The retirement provisions found in both section 24-8-215(c) and section 24-8-710(b) generally provide that (1) any judge who turns seventy while on the bench may complete his or her term of office without forfeiting retirement benefits; (2) any judge who is not eligible for retirement benefits may continue to serve until the completion of the term in which he or she receives sufficient time of service to retire without losing benefits; and (3) any judge forfeits retirement benefits who continues to serve after reaching age seventy and after the term in which the judge accrues sufficient service time to retire. Acts of the legislature are presumed constitutional, and the party challenging the statute has the burden to prove otherwise. McDaniel v. Spencer, 2015 Ark. 94, 457 S.W.3d 641. If it is possible to construe a statute as constitutional,, we must do so. Our Cmty., Our Dollars v. Bullock, 2014 Ark. 457, 452 S.W.3d 552, An act will be struck down only when 17there is a clear incompatibility between the act and the constitution. Bakalekos v. Furlow, 2011 Ark. 505, 410 S.W.3d 564. The qualifications for judicial office are found in amendment 80, section 16 of the constitution. The requirements are relatively simple. Justices of the supreme court and judges of the court of appeals are required to be licensed attorneys in Arkansas for eight years immediately preceding the date of taking office, while circuit judges must be licensed attorneys in this state for six years before assuming the bench. Ark. Const, amend. 80. § 16(A) & (B). This requirement for district judges is set at four years. Id. § 16(C). The amendment also contains geographic limitations. Id. § 16(D). It is beyond dispute that the General Assembly does not have the authority to impose qualifications for judicial office in addition to those set out in the constitution. For instance, in Daniels v. Dennis, 366 Ark. 338, 229 S.W.3d 880 (2006). this court held that Act 1148 of 2006. which provided that a person appointed as a circuit judge was ineligible to run as a candidate in the same judicial district to which she was appointed, was unconstitutional because it added a qualification required of candidates for judicial office. Also, we have held that a statute prohibiting a judge who had been removed from office from thereafter being appointed or elected to serve as judge was unconstitutional because the law imposed an additional qualification. Proctor v. Daniels, 2010 Ark. 206, 392 S.W.3d 360. We have applied this rule of law in other contexts, as well. In Allred v. McLoud, 343 Ark. 35, 31 S.W.3d 836 (2000). this court held that a local initiative that fixed term limits for county officials at five two-year terms was unconstitutional because it added a new qualification for candidacy that was not contained in the Arkansas Constitution, In the case |sof Mississippi County v. Green, 200 Ark. 204, 138 S.W.2d 377 (1940), we noted that article 7, section 29 of the Arkansas Constitution fixed the qualifications for county judge, and we held unconstitutional a statute requiring a county judge to be “learned in the law,” because it provided an additional qualification not found in the Arkansas Constitution. This court recently held that the voter-identification law was unconstitutional on its face because it imposed a qualification for voting beyond what is recognized by the constitution. Martin v. Kohls, 2014 Ark. 427, 444 S.W.3d 844. It is equally understood that the General Assembly cannot accomplish indirectly what it may not do directly. An example of this rule of law is found in Gravett v. Villines, 314 Ark. 320, 862 S.W.2d 260 (1993). There, this court held that an ordinance passed by a quorum court removing the operation of a county jail from the office of the sheriff to the office of the county judge was unconstitutional because, under the circumstances, such a measure had to be submitted to the voters at an election. As a logical corollary to that holding, we declared that a related ordinance removing funding from the sheriffs office to achieve the operational transfer of the jail was also unconstitutional because- the quorum court as a “legislative body cannot do indirectly that which the constitution prohibits it from doing directly.” Gravett, 314 Ark. at 327, 862 S.W.2d at 264. While the principles appellants rely on are indeed firmly established in our jurisprudence, they have no application here. In Dennis and Proctor, the statutes prohibited persons who were qualified under the constitution from being elected to, and serving in, judicial office. Likewise, in Allred, the law barred a constitutionally qualified incumbent from running for office, and in Green, the statute banned a qualified person from serving as 19a county judge. In Kohls, the statute was deemed unconstitutional because it prevented a duly registered voter from exercising the right to vote. In each of these situations, the statutes worked an absolute disqualification not found in the constitution. By contrast here, the statutes do not suffer from the same infirmity because the laws impose neither a direct nor an indirect qualification for holding judicial office. The statutes do not prohibit any judge from holding office past the age of seventy. Judges at that age may freely seek reelection and may serve in office. If elected past age' seventy, no judge is subject to being ousted from his or her position as a result of the statutes. Instead, the laws pertain only to a judge’s eligibility to receive retirement benefits, which are, after all, a «matter of grace bestowed by the General Assembly.[3] The age-seventy eligibility requirement found in section 24-8-215(c) first appeared in Act 139 of 1965, and it has been a continuing part of the retirement system since that time. Therefore, for over fifty years, the General Assembly has conditioned the eligibility for receiving benefits upon retirement at the age of seventy. Eligibility for benefits demonstrably is not the equivalent of a qualification for holding judicial office. Simply stated, the statutes do not constitute an additional qualification in contravention of the constitution. Accordingly, we affirm the circuit court’s ruling that the statutes do not violate amendment 80. ImV. Equal Protection Appellants’ second argument on appeal is that the forfeiture provisions of the statutes offend the equal protection clauses of the United , States and Arkansas Constitutions. Their contention is that, if the goal of the legislation is to prevent older persons from serving as judges, the means chosen by the General Assembly do not accomplish that end because the system allows someone who is first elected as a judge after the age of seventy to serve until eligibility for retirement is achieved. Ark. Code Ann. §§ 24-8-215(c)(2)(A) & 24-8-710(b)(2)(A). They assert that the statutory scheme prevents only, experienced older persons from serving as judges. Appellants correctly concede that the statutes need only pass a rational-basis test to withstand scrutiny under the equal-protection clauses. When considering an equal-protection challenge to a state legislative classification scheme that does not involve either a “suspect” classification or a “fundamental” right, the proper test is whether the classification bears some rational relationship to a permissible state objective. In re Estate of Epperson, 284 Ark. 35, 38, 679 S.W.2d 792, 793-94 (1984) (citing Dandridge v. Williams, 397 U.S. 471, 90 S.Ct. 1153, 25 L.Ed.2d 491 (1970)). Age is not a suspect classification under the Equal Protection Clause. Gregory v. Ashcroft, 501 U.S. 452, 111 S.Ct. 2395, 115 L.Ed.2d 410 (1991); Massachusetts Bd. of Retirement v. Murgia, 427 U.S. 307, 96 S.Ct. 2562, 49 L.Ed.2d 520 (1976). Neither the right of governmental employment nor the right to run for elective office is a fundamental right. Trafelet v. Thompson, 594 F.2d 623 (7th Cir.1979) (citing Murgia, supra, and Bullock v. Carter, 405 U.S. 134, 92 S.Ct. 849, 31 L.Ed.2d 92 (1972)); see also Allen v. State, 327 Ark. 350, 939 S.W.2d 270 (1997) (observing that holding public office is a political privilege and not a civil right). Judicial office is no exception. Id. Accordingly, the applicable standard is whether the Indassification is rationally related to a legitimate legislative purpose. Gregory, supra; Murgia, supra. Equal protection does not require that persons be dealt with identically; it requires only that classification rest on real and not feigned differences, that the distinctions have some relevance to the purpose for which the classification is made, and that their treatment be not so disparate as to be arbitrary. McDaniel v. Spencer, 2015 Ark. 94, 457 S.W.3d 641. When reviewing an equal-protection challenge, it is not this court’s role to discover the actual basis for the legislation. Graves v. Greene Cty., 2013 Ark. 493, 430 S.W.3d 722. Rather, we consider whether there is any rational basis that demonstrates the possibility of a deliberate nexus with state objectives so that legislation is not the product of arbitrary and capricious government purposes. Cent. Okla. Pipeline, Inc. v. Hawk Field Servs., 2012 Ark. 157, 400 S.W.3d 701. If we determine that any rational basis exists, the statute will withstand constitutional challenge. McLane S., Inc. v. Davis, 366 Ark. 164, 233 S.W.3d 674 (2006). Under the rational-basis test, legislation is presumed constitutional and rationally related to achieving any legitimate governmental objective under any reasonably conceivable fact situation. Eady v. Lansford, 351 Ark. 249, 92 S.W.3d 57 (2002). This presumption places the burden on the party challenging the legislation to prove its uneonstitutionality. Whorton v. Dixon, 363 Ark. 330, 214 S.W.3d 225 (2005). On several occasions, the United States Supreme Court has taken the opportunity to address equal-protection claims in the context of retirement provisions. In Mur-gia, supra, at issue was a Massachusetts statute that mandated the retirement of uniformed state police officers at age fifty. Applying the rational-basis test and recognizing that physical ability 112generally declines with age, the Court concluded that the state had a legitimate interest in seeking to protect the public by assuring the physical preparedness of its uniformed police officers. Because the statute furthered that legitimate goal, the Court ruled that there was no denial of equal protection. In its decision, the Court observed that the means chosen to achieve a legitimate goal need not be flawless: That the State chooses not to- determine fitness more precisely through individualized testing after age fifty is not to say that the objective of assuring physical fitness is not rationally furthered by a maximum-age limitation. It is only to say that with regard to the interest of all concerned, the State perhaps has not chosen the best means to accomplish this purpose. But where rationality is the test, a State “does not violate the Equal Protection Clause merely because the classifications made by its laws are imperfect.” Dandridge v. Williams, 397 U.S. at 485, 90 S.Ct. at 1161. Murgia, 427 U.S. at 316, 96 S.Ct. 2562. In Vance v. Bradley, 440 U.S. 93, 99 S.Ct. 939, 59 L.Ed.2d 171 (1979). the Court considered whether Congress had violated the Equal Protection Clause by requiring retirement at age sixty of federal employees covered by the Foreign Service retirement system but not those employees covered by the Civil Service retirement system. A stated purpose for mandating compulsory retirement for persons in the Foreign Service at that age was to remove older persons that may be less dependable than younger persons in facing the rigors of overseas duty. In concluding that the statutory scheme did not violate the Equal Protection Clause, the Court reasoned that the mandatory retirement age of sixty attempts to “stimulate the highest performance in the ranks of the Foreign Service” and found that the mandatory provision was not invalid because it was rationally related to the goal of superior performance. Vance, 440 U.S. at 101, 99 S.Ct. 939. In so holding, the Court also recognized that “it was quite rational to avoid the risks connected with having older employees in the Foreign Service” and [ 1s“[w]hether or not individual judges may agree with this assessment, it is not for the courts to reject it.” Id. at 106, 99 S.Ct. 939. Finally, in Gregory, supra, the Supreme Court upheld against an equal-protection challenge a Missouri constitutional provision requiring judges to retire at age seventy. There, the Court emphasized that a state’s citizens “have a legitimate, indeed compelling, interest in maintaining a judiciary fully capable of performing the demanding tasks that judges must perform,” observing that voluntary retirement, impeachment procedures, and the election process may not be sufficient to ensure this objective. Gregory, 501 U.S. at 472, 111 S.Ct. 2395. Significantly, the Court recognized that [t]he Missouri mandatory retirement provision, like all legal classifications, is founded on a generalization. It is far from true that all judges suffer significant deterioration in performance at age 70. It is probably not true that most do. It may not be true at all. But a State “does not violate the Equal Protection Clause merely because the classifications made by its laws are imperfect.” Gregory, 501 U.S. at 473, 111 S.Ct. 2395 (quoting Murgia, 427 U.S. at 316, 96 S.Ct. 2562). Even before the decision in Gregory, courts across the country had upheld mandatory retirement provisions for state judges. Those decisions include Hatten v. Rains, 854 F.2d 687 (5th Cir.1988); Malmed v. Thornburgh, 621 F.2d 565 (3d Cir.1980); Trafelet, supra; Rubino v. Ghezzi, 512 F.2d 431 (2d Cir.1975); Lerner v. Corbett, 972 F.Supp.2d 676 (M.D.Penn. 2013); Zielasko v. Ohio, 693 F.Supp. 577 (ND.Ohio 1988); Saetre v. State, 398 N.W.2d 538 (Minn.1986); O’Neil v. Baine, 568 S.W.2d 761 (Mo.1978); Maresca v. Cuomo, 105 A.D.2d 198, |14483 N.Y.S.2d 690 (1984); State v. Eyrich, 489 N.E.2d 259 (Ohio 1986); Aronstam v. Cashman, 132 Vt. 538, 325 A.2d 361 (1974).[4] It is against this backdrop in the law that appellants assert the narrow argument that the statutes deny equal protection because the laws permit a person after the age of seventy to serve as a judge until eligibility for retirement benefits is achieved. However, the underinclusiveness of a particular provision, or its failure to fully remedy a certain problem, does not make the provisions unconstitutional. The Supreme Court has been clear on this point. “Even if the classification involved here is to some extent both underinclusive and overinclusive, and hence the line drawn by Congress imperfect, it is nevertheless the rule that in a case like this ‘perfection is by no means required.’” Vance, 440 U.S. at 108, 99 S.Ct. 939 (quoting San Antonio Indep. Sch. Dist. v. Rodriguez, 411 U.S. 1, 51, 93 S.Ct. 1278, 36 L.Ed.2d 16 (1973)). See also Murgia, 427 U.S. at 316, 96 S.Ct. 2562 (stating that, where rationality is the test, a State “does not violate the Equal Protection Clause merely because the classifications made by its law are imperfect”); Dandridge, 397 U.S. at 485, 90 S.Ct. 1153 (observing that a law does not offend the Constitution simply because the classification is not made with “mathematical nicety”). Further, when we examine the justifications offered by appellees for encouraging retirement at age seventy, we can only conclude that the statutes bear a rational relationship to legitimate legislative purposes. Appellees assert, and we agree, that the laws advance the State’s interest in protecting and maintaining the integrity of the judiciary. As stated by the | ^Supreme Court, “[i]t is an unfortunate fact of life that physical and mental capacity sometimes diminish with age.” Gregory, 501 U.S. at 472, 111 S.Ct. 2895. Thus, it is not irrational for the State to promote retirement at an advanced age in order to attain the highest possible standards for the judiciary. In the same vein, we also accept that encouraging voluntary retirement “eliminates the unpleasantness of selectively removing aged and disabled judges” through formal disciplinary proceedings. Malmed, 621 F.2d at 572; see also Trafelet, 594 F.2d at 628 (recognizing that the cumbersome process of individualized removal is unlikely to be used “except in the most extreme cases”); Zielasko, 693 F.Supp. at 586 (accepting as reasonable the justification that “mandatory retirement eliminates the unpleasant task of removing aged” and senile judges). In addition, promoting voluntary retirement advances the State’s legitimate interest in maintaining high performance for the judiciary by providing greater opportunities for younger attorneys to take the bench. Relatedly, retired judges are allowed to return to service as appointed judges without forfeiting retirement benefits. See Ark.Code Ann. §§ 16-10-902 & - 903 (Repl.2010).[5] Therefore, the retirement system also “substantially increases judicial manpower by bringing in younger judges while retaining the part-time services of willing and able retired judges.” Malmed, 621 F.2d at 572; see also Rubino, 512 F.2d at 433 (recognizing the reasonableness of a mandatory age limitation at age seventy by encouraging younger attorneys with judicial aspirations). |1fiIn sum, we hold that the statutes are rationally related to the achievement of legitimate state objectives. This is the lowest form of constitutional scrutiny, and the statutory scheme in question easily passes the test. That the laws are under-inclusive, by allowing a select few to briefly evade their strictures, provides no reason at all to hold that the statutes are unconstitutional. The General Assembly could well conclude, without being arbitrary, that allowing some to serve a short time to achieve eligibility for retirement benefits is but to place repose and confidence in the voters to not elect as a first-time judge one who is past the prime of his or her abilities. With that said, it is worth repeating the Court’s admonition that “[wjhether or not individual judges may agree with this assessment, it is not for the courts to reject it.” Vance, 440 U.S. at 106, 99 S.Ct. 939. The lines drawn by the General Assembly may not be flawless, but for purposes of equal protection, perfection is simply not required. Under this point on appeal, appellants also assert that the statutory scheme lacks a rational basis because it limits judges who are elected later in life from obtaining full retirement benefits. Essentially, appellants complain that judges who serve longer terms in office receive greater benefits than those who serve less time on the bench. The entirety of the argument that appellants present on this point is confined to the statement that “[t]his discrimination is unrelated to any legitimate state interest.” However, this, too, is a policy decision that was made by the General Assembly. In our view, it is far from irrational to base retirement benefits on length of judicial service. Appellants have failed in their burden of demonstrating that the laws lack a rational basis. We sustain the circuit court’s decision that the statutes do not deny equal protection. |17VI. Due Process In this argument on appeal, appellants contend that the forfeiture provisions appear to constitute an unconstitutional taking without due process because the forfeiture statutes can be read to provide that a judge would forfeit not only the payment of monthly retirement benefits, but also a judge’s personal contributions paid into the system that were deducted from his or her salary. In response, ap-pellees assert that no taking will occur in reliance on the affidavit of the executive director that appellees presented in support of their motion for summary judgment. In her affidavit, the executive director averred that, if a judge elects to remain in office past age seventy and suffers the forfeiture of monthly retirement benefits, the judge’s personal contributions will be refunded to the judge, just as a judge’s personal contributions are refunded if a judge never attains retirement eligibility in the first instance under Arkansas Code Annotated section 24-8-209(b). It is the appellant’s burden to demonstrate the existence of reversible error. Burdine v. Ark Dep’t of Fin. & Admin., 2010 Ark. 455, 379 S.W.3d 476. In this case, appellants have failed in that burden because they have provided no argument showing that the circuit court erred in denying their due-process claim by relying on the executive director’s assurance that contributions will be refunded if a judge remains in office past age seventy. We summarily affirm on this point. VI. Constructive Discharge In this last issue, appellants cite Sterling Drug v. Oxford, 294 Ark. 239, 743 S.W.2d 380 (1988), for the proposition that a constructive discharge occurs when an employer intentionally renders an employee’s working conditions intolerable and thus forces the |1Remployee to leave the employment. Appellants assert that the arbitrary and capricious withdrawal of a judge’s retirement benefits is an intentional act that effectively renders a judge’s working conditions so intolerable that a judge is forced to surrender his or her occupation. Appellants’ attempt to create an analogy between statutes that encourage retirement and an intolerable work-place environment fails. The two are not comparable, as providing an incentive to retire at an advanced age is not the equivalent of a hostile work environment. Moreover, this court has steadfastly refused to consider an issue that is not supported by convincing argument or citation to authority. Rose v. Ark. State Plant Bd., 363 Ark. 281, 213 S.W.3d 607 (2005). There is no merit to this argument. Affirmed. Baker and Hart, JJ., concur. Brill, C.J., and Danielson, J., dissent. . This spring, and after the complaint was filed, Judge Landers stood unopposed for reelection and is scheduled to begin a new term on January 1, 2Q17. . Following his retirement, Judge Looney was appointed as á district judge in Polk County. . In Jones v. Cheney, 253 Ark. 926, 489 S.W.2d 785 (1973), this court held that, when the General Assembly establishes a retirement system to which employees make contributions, it may not constitutionally impair the rights of those employees with legislation enacted after their rights become vested. Here, the legislation was in effect decades before appellants took office, much less before they became vested in the retirement system. Consequently, the dissenting justices' preoccupation with the concept of vested property rights is entirely misplaced. See Robinson v. Taylor, 342 Ark. 459, 29 S.W.3d 691 (2000). We also observe that, when appellants became judges, they were on notice that this requirement was in place. . In dissent, Justice Danielson appears to maintain that some of these decisions are inapposite because the retirement provisions were set forth in a constitution rather than by legislative enactment However, for purposes of equal protection, the analysis is the same whether the challenged law is a constitutional provision or a statute. . Section 4 of amendment 80 provides that the supreme court has the authority to temporarily assign judges.