Cite as 2020 Ark. App. 472

# ARKANSAS COURT OF APPEALS

DIVISION III
**No.** E-20-43

|  |  |
|---|---|
|  | **Opinion Delivered:** October 7, 2020 |
| RONNIE LOVINS        APPELLANT |  |
| V. | APPEAL FROM THE ARKANSAS BOARD OF REVIEW [NO. 2019-BR-01406] |
| DIRECTOR, DEPARTMENT OF WORKFORCE SERVICES, AND US LMB RIDOUT ASSET HOLDINGS        APPELLEES | AFFIRMED |

## WAYMOND M. BROWN, Judge

Ronnie Lovins appeals the Arkansas Board of Review's (Board) decision denying him unemployment benefits upon a finding that he was discharged for misconduct in connection with the work. He contends that the evidence does not support the Board's finding and that the Board acted as an advocate for the employer. He also argues alternatively that he was constructively discharged. We affirm.

Lovins worked for US LMB Ridout Asset Holdings (Ridout) as an inside sales representative for over two years. On October 3, 2019, appellant was sitting at his desk working on a quote, when the assistant manager, Brian Nichols, began slamming things, cussing, and acting very "unprofessional and hostile" in front of a store full of customers. Nichols was trying to blame appellant for a customer's order not being placed. Appellant got upset and went to the back to speak to the store manager, Tim Stallings, but he was not

in.  Appellant subsequently clocked out and stopped by Jodie Stovall's office to inform her about what had just taken place and to notify her that he was leaving for the day.[1]   He called Stallings later that evening to discuss what had taken place and to ask if he still had a job if he returned the next day.  At that point, appellant was informed that Ridout was not for him and that he no longer had a job.

Appellant subsequently filed for unemployment benefits.  The Department of Workforce Services (Department) issued a determination on November 18 denying appellant benefits upon a finding that he left his last work voluntarily and without good cause connected with the work.  Appellant appealed that determination to the Arkansas Appeals Tribunal (Tribunal).  The Tribunal held a telephone hearing on December 4.  Appellant testified about the above events.  He also testified that October 3 was not the first time Nichols had behaved in such a way and that other employees had complained to him that Nichols had cussed them and that he had been mean and hostile to them as well.  Appellant stated that he was calling to ensure that he was not "going to walk into the same hostile environment when [he] got back the next day."  He said that he had never spoken with Stallings about Nichols's behavior until he called Stallings the evening of October 3.  However, he stated that he had spoken with Stovall on several occasions as "just a sounding board, somebody to talk to about it."  He testified that he "never dreamt" he would be fired for leaving and he assumed that he would still have a job and that everything would be calm and run smoothly the next day.

_____

[1]Stovall is the office manager at Ridout.

Stallings testified that he is the store manager at Ridout. He stated that the events of October 3 "was pretty much like [appellant] said." He only disagreed with appellant's level of involvement in the situation where the customer's order never got placed. He said that he was told that appellant walked out and quit. He testified that when appellant called him, he informed appellant that his job had been terminated. He stated that both he and Nichols had been frustrated with appellant because he was not able to stay on top of what he needed to do. He conceded that Nichols did not handle the situation correctly. He denied that Stovall had ever mentioned any complaints appellant had about Nichols. He said that he had talked to appellant on several occasions about his performance and that the situation on October 3 "was just some more things [he] had sat down and talked to Mr. Lovins [about] before."

When asked about his witnesses, appellant stated that his wife, Amy Lovins, was present when he was on the phone with Stallings and heard the conversation over the speakerphone. The Tribunal stated that there was nothing in contention with appellant's and Stallings's testimony and that the Tribunal did not need Amy to tell it the exact same thing that was already on the record. He stated that Mr. Mitchell was present when everything took place, but the Tribunal stated that appellant and Stallings had already testified about what happened on the day in question. He also said that he had a witness "that says they said they tried to call me and that I told them that I quit, and that's false." The Tribunal responded that it had already heard that testimony and asked appellant whether there was anything else to which appellant replied, "That's it."

3

The Tribunal issued its decision on December 5. It modified the Department's determination to reflect that appellant was discharged for leaving work without permission, which amounted to misconduct in connection with the work. Appellant appealed that decision to the Board, contending that (1) the employer committed perjury; (2) the Tribunal failed to develop the facts, so, the hearing should be continued to allow witnesses and to allow appellant's attorney to cross–examine Ridout's witnesses; (3) the Tribunal's decision is not based on substantial evidence; (4) appellant was denied due process guaranteed by the Fourteenth Amendment to the United States Constitution, when the ALJ failed to consider the record as a whole, and failed to make findings supported by the evidence.

The Board issued its decision on January 28, 2020. It denied appellant's request that additional evidence be taken. It also affirmed the Tribunal's decision that appellant was terminated for misconduct connected with the work due to his failure to seek permission before leaving his job post for the day. Appellant appealed the Board's decision to this court.

Our standard of review in unemployment-insurance cases is well settled. We do not conduct de novo reviews in appeals from the Board.[2] Instead, we review the evidence and all reasonable inferences deducible therefrom in the light most favorable to the Board's findings of fact.[3] The Board's findings of fact are conclusive if supported by substantial evidence, which is such relevant evidence that a reasonable mind might accept as adequate

---

[2]*West v. Dir.*, 94 Ark. App. 381, 231 S.W.3d 96 (2006).

[3]*Rockin J Ranch v. Dir.*, 2015 Ark. App. 465, 469 S.W.3d 368.

to support a conclusion.[4] Even when there is evidence upon which the Board might have reached a different decision, the scope of judicial review is limited to a determination of whether the Board could have reasonably reached the decision rendered based on the evidence presented.[5] Credibility calls are for the finder of fact, as is the weight to be accorded to testimony.[6]

A claimant is disqualified from receiving unemployment benefits if the claimant is discharged from his last work for misconduct in connection with the work.[7] Misconduct includes the violation of any behavioral policies of the employer, disregard of the employer's rules, disregard of the standards of behavior that the employer has a right to expect from its employees, and disregard of the employee's duties and obligations to the employer.[8] It is the employer's burden to establish misconduct by a preponderance of the evidence.[9] Whether an employee's behavior is misconduct that justifies the denial of unemployment benefits is a question of fact for the Board to decide.[10]

Much of appellant's first argument focuses on the initial Department determination that he quit. However, that determination was modified by the Tribunal when it found

---

[4] *Id.*

[5] *Id.*

[6] *Id.*

[7] Ark. Code Ann. § 11–10–514(a) (Repl. 2012).

[8] *Rockin J Ranch*, *supra*.

[9] *Jones v. Dir.*, 2014 Ark. App. 426, 439 S.W.3d 85.

[10] *Id.*

that appellant was terminated for misconduct in connection with the work. The Board affirmed the Tribunal's finding of misconduct, not that of the Department. Therefore, we are only concerned with the Board's finding. To the extent that appellant argues that the evidence does not support a finding that he quit, we hold that that is not the finding before this court. Appellant also alleges perjury on the part of Ridout, but that goes to the credibility of the witnesses, which we defer to the finder of fact—in this case, the Board.

The Board, in affirming the Tribunal, found in pertinent part:

> After reviewing the evidence, the Board finds the employer has proven the claimant committed an act of misconduct. Here, the Board finds that claimant was upset because the assistant manager publicly berated him. Nevertheless, the Board finds the claimant failed to seek permission prior to leaving his job post for the day. Although the claimant was upset, the Board finds the claimant still had a duty to the employer to seek permission to leave work prior to clocking out for the day. Consequently, the Board finds the claimant intentionally violated the employer's rules and disregarded its interests. Accordingly, the Board finds the claimant was discharged from last work for misconduct connected with the work.

The Board laid out the specific instance of misconduct it relied on in denying appellant unemployment benefits. Substantial evidence supports the Board's finding. Accordingly, we affirm.

Appellant argues alternatively that he was constructively discharged. However, there is no indication that he raised constructive discharge to either the Tribunal or the Board. Even if he had, there is nothing in this fact situation to show that he was constructively discharged. Constructive discharge occurs when an employer intentionally renders an employee's working conditions intolerable and thus forces the employee to leave the employment.[11] Here, the fact that appellant contacted Stallings the evening he left to see if

---

[11]*Landers v. Stone*, 2016 Ark. 272, 496 S.W.3d 370.

6

he could return to work the next day dispels any indication that he was constructively discharged.

Finally, appellant contends that the Tribunal became an advocate for Ridout and denied appellant the right to call three witnesses, thereby denying him due process and equal protection under the Fourteenth Amendment to the Constitution. He argues that the Tribunal assumed the role of advocate for Ridout to the detriment of objectivity and in violation of appellant's constitutional rights. There is no indication that the arguments before this court were raised below.[12] To defend this, appellate counsel states in reply that "Appellant represented himself, pro se, at the telephone hearing. Only after the appeal was lodged with this Court did the undersigned receive the record to review and made a determination of denial of due process and equal protection after reading the transcript of the ALJ's conduct during the hearing." However, counsel fails to cite us to any case law that will make this situation an exception to our rule that even constitutional issues have to be raised and fully developed below. Therefore, it is not properly before us and we decline to address it.

Affirmed.

ABRAMSON and SWITZER, JJ., agree.

*Larry J. Steele PLC*, by: *Larry J. Steele*, for appellant.

*Cynthia Uhrynowycz*, for separate appellee Director, Arkansas Division of Workforce Services.

---

[12]Appellant argued that he was denied due process because the Tribunal failed to consider the record as a whole and failed to make findings supported by the evidence.