Cite as 2025 Ark. 42

# SUPREME COURT OF ARKANSAS

**No.** CV-24-716

| | |
|---|---|
| VINCENT STANDRIDGE, IN HIS PERSONAL CAPACITY AS A PARENT; AND MINOR CHILD, BY AND THROUGH HIS FATHER AND NEXT FRIEND, VINCENT STANDRIDGE<br><br>APPELLANTS<br><br>V.<br><br>FORT SMITH PUBLIC SCHOOLS; DR. TERRY MORAWSKI, SUPERINTENDENT, IN HIS OFFICIAL CAPACITY; DALTON PERSON, SCHOOL BOARD PRESIDENT, IN HIS OFFICIAL CAPACITY; PHIL WHITEAKER, SCHOOL BOARD VICE-PRESIDENT, IN HIS OFFICIAL CAPACITY; DAVIN CHITWOOD, SCHOOL BOARD SECRETARY, IN HIS OFFICIAL CAPACITY; MATT BLAYLOCK, BOARD MEMBER, IN HIS OFFICIAL CAPACITY; SUSAN KRAFT, BOARD MEMBER, IN HER OFFICIAL CAPACITY; LYNNETT LOTT, BOARD MEMBER, IN HER OFFICIAL CAPACITY; TALICIA RICHARDSON, BOARD MEMBER, IN HER OFFICIAL CAPACITY; AND MICHAEL BEAUMONT, DIRECTOR OF ATHLETICS & ACTIVITIES, IN HIS OFFICIAL CAPACITY<br><br>APPELLEES | **Opinion Delivered:** April 17, 2025<br><br><br>APPEAL FROM THE SEBASTIAN COUNTY CIRCUIT COURT [NO. 66FCV-24-612]<br><br>HONORABLE GREG MAGNESS, JUDGE<br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br>REVERSED AND REMANDED IN PART; AFFIRMED IN PART |

**NICHOLAS J. BRONNI, Associate Justice**

The Fort Smith School District treats transfer students differently depending on whether they transfer from inside or outside the district. If a student transfers into the district from another district (*i.e.*, an *inter*district transfer), that student is immediately eligible to play sports at his new school. By contrast, if a student transfers between schools within the district (*i.e.*, an *intra*district transfer), that student cannot play sports for one year. Standridge argues that policy violates state law, equal protection, and parental rights, and otherwise constitutes an abuse of power.

The circuit court rejected all four arguments and dismissed Standridge's complaint. We reverse in part and affirm in part—concluding that Fort Smith's policy of excluding *intra*district transfer students from sports based solely on their transfer status violates Arkansas Code subsection 6-18-1904(f), but not our constitution. We also direct the clerk to immediately issue the mandate.

## Background

The Fort Smith School District operates two brick-and-mortar high schools, Northside and Southside, and a virtual academy. C.S. attends the district's virtual academy, and he previously participated in extracurricular activities at Northside as a freshman. Before his sophomore year, C.S. transferred his extracurricular activities to Southside, making him ineligible to participate for a year under the district's transfer rules. Had C.S. transferred to Southside from a school outside of Fort Smith, he would have been immediately eligible to play.

2

Standridge, C.S.'s father, filed this lawsuit and sought an injunction against the district's policy rendering C.S. ineligible to play sports for a year. Standridge argued that restriction is preempted by Arkansas Code subsection 6-18-1904(f), which prohibits denying "[a] student who transfers to another public school or a nonresident district under this subchapter" the ability to participate in an extracurricular activity. Ark. Code Ann. § 6-18-1904(f)(1) (Supp. 2023). He also argued it violates our constitution by treating intradistrict and interdistrict transfer students differently; violates his parental rights; and is an abuse of power. The district moved to dismiss Standridge's complaint arguing that subsection 1904(f) does not apply to intradistrict transfer restrictions, like the one Standridge challenges, and that the district's policy does not violate our constitution.

The circuit court rejected Standridge's arguments, holding that subsection 1904(f) only protects *inter*district transfer students—not *intra*district transfer students, like C.S.—and that the district's policy does not violate our constitution or otherwise constitute an "abuse of power." It dismissed the complaint. Standridge timely appeals.

**Discussion**

Standridge seeks reversal of the circuit court's dismissal order. He argues that, contrary to the circuit court's decision, the district's policy: 1) violates subsection 6-18-1904(f); 2) violates equal protection under the Arkansas Constitution; 3) violates Standridge's parental rights under the Arkansas Constitution; and 4) is an abuse of power.

We review the circuit court's legal conclusions—including its statutory analysis—*de novo*. *See Lewallen v. Progress for Cane Hill*, 2024 Ark. 167, at 2, 699 S.W.3d 101, 103. Conducting that review, we reverse and remand in part and affirm in part. First, we reverse

3

the circuit court's order dismissing Standridge's claim that the district's policy making intradistrict transfer students ineligible for sports violates subsection 1904(f) and remand for entry of a judgment in Standridge's favor on that claim. Second, we affirm the circuit court's dismissal of Standridge's equal protection, parental rights, and abuse of power claims because they fail as a matter of law.

## A. Statutory Claim—Subsection 1904(f)

We construe statutes "just as [they] read[,] . . . giving the words their ordinary and usually accepted meaning in common language." *Lewallen*, 2024 Ark. 167, at 2, 699 S.W.3d at 103. Applying that standard, we conclude that Arkansas Code subsection 6-18-1904(f) applies to both intra- and interdistrict transfers. The circuit court erred in holding otherwise.

Subsection 1904(f) prohibits denying "[a] student who transfers to another public school or a nonresident district under this subchapter" the ability to participate in an extracurricular activity. Ark. Code Ann. § 6-18-1904(f)(1) (Supp. 2023). That bar is not boundless; it does not apply where there is "demonstrable evidence" that a student has been "recruit[ed]" or is "transferring to the public school or nonresident district solely for athletic purposes." Ark. Code Ann. § 6-18-1904(f)(2)(C)(ii). So "[b]efore a student is eligible to participate . . . at the public school or nonresident school district," the student must complete a form—certified by a school official—affirming the transfer is not for an impermissible purpose. Ark. Code Ann. § 6-18-1904(f)(2)(C)(i).

The school district argues that subsection 1904(f)'s prohibition on excluding transfer students from extracurricular activities applies only to students who transfer between districts (i.e., *inter*district transfers); Standridge counters, saying that language covers both students

4

who transfer between districts and students who transfer between schools within a single district (i.e., *intra*district transfers). The text supports Standridge.

On its face, subsection 1904(f) prohibits discriminating against "[a] student who transfers to another public school *or* a nonresident district under this subchapter," Ark. Code Ann. § 6-18-1904(f)(1) (emphasis added), and establishes procedures for enforcing that prohibition. "The word 'or' is almost always disjunctive," that is, it is "generally used to indicate an alternative." *Campos-Chaves v. Garland*, 602 U.S. 447, 457 (2024) (internal quotation marks omitted); *accord Bakalekos v. Furlow*, 2011 Ark. 505, at 11, 410 S.W.3d 564, 572 ("the word 'or' is a disjunctive particle that marks an alternative"). That is how it is repeatedly used throughout subsection 1904(f), and when that is the case, we generally give "the words it connects . . . separate meanings." *United States v. Woods*, 571 U.S. 31, 45 (2013) (internal quotation marks omitted). Here, the phrases "another public school" and "nonresident district" only have independent meaning if the former covers intradistrict transfers and the latter interdistrict transfers. And applying those independent meanings, subsection 1904(f) protects both intra- and interdistrict transfer students. *See* Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 119 (2012) (explaining that "[the] singular-negation effect, forbidding doing *anything* listed, occurs when the disjunctive *or* is used after a word such as *not* or *without*" (emphasis in original)).

In response, the district argues context matters and, it says, that context shows subsection 1904(f) covers only interdistrict transfers. It explains that provision is part of a larger statute and subchapter about *inter*district—and only interdistrict—transfers. As such, the district argues, it does not make sense to read subsection 1904(f) to regulate a broader

5

universe of transfers. Underscoring the point, the district correctly points out that the phrase "[a] student who transfers to another public school or a nonresident district" is immediately followed by the qualifier "under this subchapter."

The district's argument is not without merit. To be sure, "conjunctions are versatile words, which can work differently depending on context." *Pulsifer v. United States*, 601 U.S. 124, 151 (2024); *see also* Scalia & Garner, *supra*, at 168 (discussing the whole-text canon). And we do not dispute that subsection 1904(f) is oddly placed. But Standridge ultimately has the better textual reading. If the district is correct, every transfer to "another public school" is also a transfer to a "nonresident district" and vice versa. So adopting the district's reading would render either "another public school" or "nonresident district" superfluous, and we do not normally do that. *See McGill v. Thurston*, 2024 Ark. 146, at 8, 698 S.W.3d 121, 125–26 ("Statutes are to be construed so that no word is left void, superfluous, or insignificant, and we give meaning to every word in the statute, if possible."). By contrast, on Standridge's reading, transfers to "another public school" are not always transfers to a "nonresident district." For example, a student like C.S. transfers to "another public school" but not to a "nonresident district."

And—contrary to the dissent's conclusion—not every transfer to a nonresident district is also a transfer to another public school. A private school student in Little Rock transferring to a public school in Bryant, for instance, is not transferring to "another public school" (the student was never in a public school) but is transferring to a "nonresident district." Thus, only Standridge's reading gives independent meaning to both "another public school" and "nonresident district."

6

The qualifying phrase "under this subchapter" does not suggest otherwise. To the contrary, reading "under this subchapter" to modify only the "nonresident district" category makes sense "as a matter of grammar" because "a limiting clause or phrase . . . should ordinarily be read as modifying only the noun or phrase that it immediately follows." *Barnhart v. Thomas*, 540 U.S. 20, 26 (2003). That rule also makes sense here because the only transfers "under this subchapter" are "nonresident district" transfers. *See* Ark. Code Ann. § 6-18-1903(a) ("A public school choice program is established to enable a student . . . to attend a school in a nonresident district.").

At best, the district's argument suggests that the phrase "under this subchapter" was an unnecessary addition. Perhaps so, but "[t]he canon against superfluity is not a canon against verbosity" and "one does not always have to cast about for some additional meaning to the word or phrase that could have been dispensed with." *Ransom v. FIA Card Servs., N.A.*, 562 U.S. 61, 81 (2011) (Scalia, J., dissenting); *accord Bruesewitz v. Wyeth LLC*, 562 U.S. 223, 236 (2011) ("[T]he rule against giving a portion of text an interpretation which renders it superfluous does not prescribe that a passage which could have been more terse does not mean what it says."). Rather, as "has always been understood," legislators sometimes include concluding phrases that add "nothing but emphasis." *Ransom,* 562 U.S. at 81 (agreeing with a House of Lords' opinion that, in "the phrase 'in addition to and not in derogation of' the last part adds nothing but emphasis"). And that is true of many Arkansas laws. *See, e.g.*, Ark. Code Ann. § 6-18-1904(d)(1) ("the transfer student's parent is responsible for the transportation of the transfer student *to and from the school*" (emphasis added)); Ark. Code Ann. § 6-18-209 (Repl. 2021) ("Each school district . . . shall develop

7

strategies for promoting maximum student attendance, including, *but not limited to*, the use of alternative classrooms and in-school suspensions" (emphasis added)).  Besides, finding "under this subchapter" verbose does far "[less] violence to the text," *Green v. Bock Laundry Mach. Co.*, 490 U.S. 504, 529 (1989) (Scalia, J., concurring), than reading "another public school" out of it.  *See Bruesewitz*, 562 U.S. at 236 ("The rule [against superfluidity] applies only if verbosity and prolixity can be eliminated by giving the offending passage, or the remainder of the text, a competing interpretation.").

Applying established rules of statutory construction, we conclude that subsection 1904(f) prohibits schools from excluding transfer students from extracurricular activities based solely on their transfer status.  That renders the district's policy void, and we reverse the circuit court's conclusion to the contrary and remand for entry of judgment on this declaratory judgment.

### B. Equal Protection

Standridge's equal-protection claim fails as a matter of law.  Our constitution provides that, "[t]he equality of all persons before the law is recognized, and shall ever remain inviolate" and that no citizen shall be "exempted from any burden or duty, on account of race, color or previous condition."  Ark. Const. art. 2, § 3.  Standridge argues the district's policy violates that provision because it treats intradistrict transfer students (like C.S.) differently than interdistrict transfer students and that such differential treatment lacks a rational basis.  We reject that claim.

Standridge does not allege discrimination based on a suspect classification, and as such, his claim that the district treats intra- and interdistrict transfer students differently is

8

subject to rational-basis review. *See Landers v. Stone*, 2016 Ark. 272, at 10, 496 S.W.3d 370, 377 (where the challenge "does not involve either a 'suspect' classification or a 'fundamental' right, the proper test is whether the classification bears some rational relationship to a permissible state objective."); *City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 441-42 (1985) (absent suspect classification, "the Equal Protection Clause requires only a rational means to serve a legitimate end"). Under that standard, we ask whether the government's action is "rationally related to achieving any legitimate governmental objective under any reasonably conceivable fact situation"—not whether it was a good justification or the one the government actually invoked. *Landers,* 2016 Ark. 272, at 11, 496 S.W.3d at 378.

Applying that standard, the district's transfer policy easily passes. As the circuit court explained, the district could rationally conclude that limiting the ability of intradistrict transfer students would promote stability and permit more efficient planning. That is sufficient to survive rational-basis review. Moreover, that is true even if restricting interdistrict student participation would serve similar goals since equal-protection principles do not require the government to "choose between attacking every aspect of a problem or not attacking the problem at all." *Dandridge v. Williams*, 397 U.S. 471 (1970). And in any event, from the district's perspective, intradistrict transfers may well be more problematic since they impact two schools within the district rather than one.

Nor does the fact that the district's policy violates subsection 1904(f) mean the policy lacks a rational basis since the equal-protection and preemption inquiries are separate and distinct. *See Snowden v. Hughes*, 321 U.S. 1, 10 (1944) ("[The] illegality [of a school board's

9

action] under the state statute can neither add to nor subtract from its constitutional validity. Mere violation of a state statute does not infringe the federal Constitution.").  Indeed, we previously said as much, making clear that, rational-basis review only requires the "mere *possibility* of a deliberate nexus with state objectives."  *Landers*, 2016 Ark. 272, at 11, 496 S.W.3d at 378 (emphasis added).

We hold that the district's policy survives rational-basis review and affirm the dismissal of Standridge's equal protection claim.

## C. Right to Parent

Standridge argues that the district's decision not to allow C.S. to play sports at Southside High School violates his parental rights.  But it is hard to see how that is the case. We have previously held that there is "no constitutional right to play sports or engage in other school activities." *Arkansas Activities Ass'n v. Meyer*, 304 Ark. 718, 722, 805 S.W.2d 58, 61 (1991) (rejecting challenge to age limitation for school sports).  And Standridge does not cite anything for the proposition that simply relabeling that claim as one about parental rights changes the analysis.  Nor does he explain how the policy at issue here "unreasonably interferes with the liberty of parents and guardians to direct the upbringing and education of [their] children." *Pierce v. Soc'y of the Sisters*, 268 U.S. 510, 534 (1925).  We therefore affirm the dismissal of Standridge's claim.

## D.  Abuse of Power

Standridge lastly argues the district committed an "abuse of power" by violating state law and equal protection.  But our jurisprudence does not recognize an "abuse of power"

claim,[1] and there is no basis for reframing his other claims in this manner. Because we do not recognize such a claim, it "fails as a matter of law." *Lambert v. LQ Mgmt., L.L.C.*, 2013 Ark. 114, 426 S.W.3d 437, 441 (2013). We therefore affirm the lower court's decision to dismiss the claim "for a different reason." *Fells v. State*, 362 Ark. 77, 84, 207 S.W.3d 498, 503 (2005).

**Conclusion**

There are many reasons why districts might want to restrict a transfer student's ability to join a new sports team, switch debate teams, or change robotics teams. It displaces other students, interferes with planning, and—as the college portal demonstrates—can have cascading effects. *See* Stewart Mandel & Ralph D. Russo, *How is college football trying to rein in 'wild West' of transfers? Make players pay to leave*, The Athletic, Mar. 14, 2025, https://www.nytimes.com/athletic/6197275/2025/03/14/college-football-transfer-portal-nil-contract-buyout-clauses/ (archived at https://perma.cc/MD9M-S3Q8). There are also lots of reasons to think such restrictions harm students, robbing them of valuable opportunities to compete.

Ultimately, it is up to the legislature to resolve that debate. The General Assembly did so here when it adopted subsection 1904(f) and barred schools from adopting policies restricting students from participating in extracurricular activities based solely on their transfer status. As a result, we reverse the circuit court's dismissal of Standridge's complaint,

---

[1] Some of our cases suggest in some circumstances a district's actions might be subject to review "in the exercise of" its discretion where "there is a clear abuse of it." *See Koch v. Adams*, 2010 Ark. 131, at 8, 361 S.W.3d 817, 822 (internal citation omitted). Standridge neither invokes that standard nor cites any cases involving it.

direct the circuit court to enter judgment invalidating the district's transfer policy, and affirm the dismissal of Standridge's remaining claims.

We also direct the clerk to issue the mandate in this matter immediately so that C.S. can participate in extracurricular activities before the spring semester ends. Having already been barred from participating in the fall—and with the ban lasting only a year—any further delay would severely undermine the relief to which C.S. is entitled. And contrary to the dissent's suggestion, while we typically expedite mandates in election or execution cases, nothing in the rule prohibits doing so in other cases where, as here, compelling reasons exist. *See* Ark. Sup. Ct. R. 5-3(b).

Reversed and remanded in part; affirmed in part.

Mandate to issue immediately.

BAKER, C.J., and HUDSON and HILAND, JJ., concur in part and dissent in part.

**COURTNEY RAE HUDSON, Justice, concurring in part and dissenting in part.** I concur with the majority's decision to affirm the dismissal of Standridge's claims regarding equal protection, right to parent, and abuse of power. However, I dissent from the majority's interpretation of Act 768 of 2023. I would affirm the circuit court's order in its entirety.

First, some context is necessary to understand the statutory-interpretation issues presented. Act 768 amended both the Arkansas Opportunity Public School Choice Act (the Opportunity Act) and the Public School Choice Act of 2015 (the School Choice Act), using identical language. It is the amendment to the School Choice Act that is at issue in this case. In the School Choice Act, the legislature included findings that "[t]hese benefits of enhanced

12

quality and effectiveness in our public schools justify permitting a student to apply for admission *to a school in any school district beyond the school district in which the student resides*[.]" Ark. Code Ann. § 6-18-1901(b)(3) (Repl. 2021) (emphasis added). The School Choice Act defines "resident district" to mean the school district in which the student resides as determined under section 6-18-202 (Supp. 2023) (age and residence requirements for attending public schools); "nonresident district" to mean a school district other than a student's resident district; and "transfer student" to mean "a public school student in kindergarten through grade twelve (K–12) who transfers to a nonresident district through a public school choice option under this subchapter." Ark. Code Ann. § 6-18-1902(1), (3), (4) (Supp. 2023). The School Choice Act establishes a public-school choice program "to enable a student in kindergarten through grade twelve (K-12) to attend a school in a nonresident district[.]" Ark. Code Ann. § 6- 18-1903(a). In short, the School Choice Act as a whole regulates student transfers to nonresident school districts; in other words, it governs interdistrict transfers, not intradistrict transfers.

Against this background, we are tasked with interpreting Act 768 to determine whether its provisions apply to intradistrict transfers, such as C.S.'s, as well as interdistrict transfers. The relevant portion of the statute at issue provides:

> (f)(1) A student who *transfers to another public school or a nonresident district under this subchapter* shall not be:
>
> (A) Denied participation in an extracurricular activity at the public school or nonresident district to which he or she transfers based exclusively on his or her decision to transfer to the public school or nonresident district[.]

Ark. Code Ann. § 6-18-1904(f)(1) (emphasis added). We review issues of statutory interpretation de novo. *Steve's Auto Ctr. of Conway, Inc. v. Ark. State Police*, 2020 Ark. 58,

13

at 3, 592 S.W.3d 695, 698. The primary rule of statutory interpretation is to give effect to the intent of the legislature. *Keep Our Dollars in Indep. Cnty. v. Mitchell*, 2017 Ark. 154, at 7, 518 S.W.3d 64, 68. We construe the statute just as it reads, giving the words their ordinary and usually accepted meaning in common language. *Id.* Where the language is plain and unambiguous, this court determines legislative intent from the ordinary meaning of the language used. *Mississippi Cnty. v. City of Blytheville*, 2018 Ark. 50, at 12–13, 538 S.W.3d 822, 830–31.

In this case, both sides maintain that the language of the statute is clear and unambiguous. Standridge argues that "another public school" means any other public school, including a school within the same district. This interpretation, however, would necessarily mean that "under this subchapter" modifies "a nonresident district." It would also, however, render "a nonresident district under this subchapter" superfluous because Standridge's reading of "another public school" would necessarily include public schools in resident districts as well as in nonresident districts. In other words, to encompass both interdistrict and intradistrict transfers, the General Assembly could have simply stated that the prohibition applies when a student transfers to "another public school" because that would include transfers to both a public school in the resident district and a public school in a nonresident district. As the majority notes, this court construes a statute so that no word is left void, superfluous, or insignificant, and this court gives meaning and effect to every word in the statute, if possible. *See Simpson v. Cavalry SPV I, LLC*, 2014 Ark. 363, at 3, 440 S.W.3d 335, 338.

14

The school district, on the other hand, points to the qualifying phrase "under this subchapter," contending that it limits the applicable *transfers* to those under the School Choice Act ("this subchapter"). In other words, the school district reads "under this subchapter" to modify "transfers." Under this reading, the prohibition on denying participation in extracurriculars applies to transfers under the School Choice Act. Of course, the School Choice Act by its terms governs only transfers to nonresident districts. However, this interpretation leaves open the question of what was intended by "another public school."

Reviewing these competing interpretations presented by the parties leads to the conclusion that the statute is ambiguous. A statute is ambiguous if it is open to two or more constructions, or if it is of such obscure or doubtful meaning that reasonable minds might disagree or be uncertain as to its meaning. *Dickinson v. SunTrust Nat'l Mortg. Inc.*, 2014 Ark. 513, at 4, 451 S.W.3d 576, 579. When a statute is ambiguous, this court must interpret it according to legislative intent, and our review becomes an examination of the whole act. *See Valley v. Pulaski Cnty. Cir. Ct.*, 2014 Ark. 112, 431 S.W.3d 916. In reviewing the act in its entirety, this court will reconcile provisions to make them consistent, harmonious, and sensible in an effort to give effect to every part. *Id.*

This court has long held that the title of an act is not controlling, but it may be examined for the purpose of shedding light on the intent of the legislature when the statutory language is ambiguous. *See K.C. Props. of Nw. Ark., Inc. v. Lowell Inv. Partners, LLC*, 373 Ark. 14, 21, 280 S.W.3d 1, 8 (2008). Act 768's title provides:

> AN ACT TO AMEND THE PUBLIC SCHOOL CHOICE ACT OF 2015; TO AMEND THE ARKANSAS OPPORTUNITY PUBLIC SCHOOL CHOICE

15

ACT; TO ENSURE A STUDENT WHO *TRANSFERS TO A NONRESIDENT DISTRICT* IS AFFORDED CERTAIN OPPORTUNITIES AND RIGHTS; AND FOR OTHER PURPOSES.

2023 Ark. Acts, at 4213 (emphasis added). The title of the Act reveals that the General Assembly intended it to apply to students who transfer to nonresident districts—i.e., interdistrict transfers.

Looking to other provisions of Act 768, the Changing Schools/Athletic Participation (CSAP) form requirement also contemplates an interdistrict transfer. The CSAP form must be completed for a student to be eligible to participate in an extracurricular activity at the public school or nonresident school district to which he or she transfers. Ark. Code Ann. § 6-18-1904(f)(2). It "shall be signed by" both the "[s]uperintendent of the student's resident school district" and the "[s]uperintendent of the nonresident school district to which the student transfers." *See* Ark. Code Ann. § 6-18-1904(f)(2)(C). There is only one logical way to read this provision: transfers must be from one school district (the resident school district) to another, separate school district (the nonresident school district).

Finally, as discussed above, the legislative findings and statutory definitions of the School Choice Act also support the interpretation that Act 768 is limited to interdistrict transfers. In short, our interpretive tools lead to the conclusion that Act 768 applies to interdistrict transfers only. As the school district suggested at the hearing below, the reference to "another public school" was perhaps intended to refer to certain charter schools. It is also worth noting that the identical language used in the Opportunity Act may shed some light on the term "another public school." The Opportunity Act governs student transfers from failing schools, including transfers within the same district. *See* Ark. Code

16

Ann. § 6-18-227. In that context, the provision for transfer to "another public school" does have a clear and obvious independent meaning.

Based on the above, the better interpretation is that Act 768 applies only to interdistrict transfers. Therefore, the protections of Arkansas Code Annotated section 6-18-1904(f) do not apply to invalidate the school district's policy regarding participation in athletics following intradistrict transfers. The circuit court's order should be affirmed.

Finally, I note that the majority has chosen to issue the mandate immediately. While there is nothing prohibiting the immediate issuance of the mandate under Arkansas Supreme Court Rule 5–3(b), this is simply not a case in which doing so is appropriate. The practice of issuing a mandate immediately, rather than after a petition for rehearing has been ruled on or upon the expiration of the time for filing a petition for rehearing, is typically reserved for cases that have been expedited, such as election and execution cases. Here, Standridge did not request expedited consideration of this appeal or immediate issuance of the mandate. While this case is no doubt extremely important to the parties, the same can be said for every case this court decides.

For the reasons set out above, I respectfully concur in part and dissent in part.

BAKER, C.J., and HILAND, J., join.

*Dusti Standridge*, for appellants.

*Friday, Eldredge & Clark, LLP*, by: *Marshall S. Ney* and *Logan Vickery*, for appellees.