Cite as 2020 Ark. App. 217

# ARKANSAS COURT OF APPEALS

DIVISION II

**No.** CR-18-504

| | |
|---|---|
| | **Opinion Delivered** April 8, 2020 |
| ANDRIS MCCLENDON<br>APPELLANT | APPEAL FROM THE PULASKI COUNTY CIRCUIT COURT, FIRST DIVISION |
| V. | [NO. 60CR-17-1570] |
| STATE OF ARKANSAS<br>APPELLEE | HONORABLE LEON JOHNSON, JUDGE |
| | AFFIRMED |

## BRANDON J. HARRISON, Judge

Andris McClendon appeals the circuit court's denial of his motion to transfer his case to the juvenile division. He asserts that the circuit court's decision was clearly erroneous. We find no error and affirm.

In May 2017, sixteen-year-old McClendon was charged in the Pulaski County Circuit Court with one count of battery in the first degree by means of a firearm. In July 2017, he filed a motion to transfer his case to the juvenile division. The circuit court convened a hearing on the motion; the testimony presented at this hearing was previously summarized by this court as follows.

> Detective Roy Williams of the Little Rock Police Department was the State's only witness at the transfer hearing. He testified that on April 9, 2017, he responded to a report of a double shooting at approximately 11:00 a.m. in the area of 27th and Washington. According to Williams, two people had suffered gunshot wounds, but neither were at the scene when he arrived; although most witnesses only heard the gunshots, one individual stated he had

seen two black males (one with a small afro and the other with dreadlocks) run to a light blue Toyota Camry, drive away, hit another vehicle, and then abandon the vehicle. Williams also spoke to an individual on 29th Street who advised he had seen three black males together (one with dreadlocks), and one of the males had placed some guns in his barbeque grill; two firearms were located in the grill. McClendon was located by patrol officers at a church in the 4300 block of West 29th, where he had told people inside he had been shot.

Detective Williams interviewed Jaylen Hussian, one of the persons who had been shot, at Arkansas Children's Hospital (Children's), at which time Hussian informed him the person who shot him was also at Children's and was named Andris. When asked why he thought appellant had shot him, Hussian said he had gone to school with appellant in the past. He said he saw McClendon and one of McClendon's friends (who had dreadlocks) sitting on the porch of a residence, and they had begun shooting at him.

Detective Williams initially encountered McClendon at Children's. McClendon waived his rights and spoke to Williams, claiming the shooting was in self-defense. McClendon told Williams he had been in the area with his friend Little Greg; they were sitting on the front porch of a residence; they heard gunshots, looked up, and saw Jaylen Hussian; they assumed Hussian was shooting at them; Little Greg began shooting toward Hussian, and he began to shoot, too; they ran to the Camry; as they were trying to get into the vehicle, he was shot in the foot; they ran the vehicle into a parked car and then got out and ran off; he had a revolver with him but dropped it. McClendon said he did not see Hussian with a gun, but he just assumed Hussian was shooting because he was the only one in the area when they heard the shots. Williams did not allege McClendon had fired all the shots in the altercation; he also stated there appeared to be bullet holes in the Camry, but he noted that the vehicle was stolen, and the bullet holes were not necessarily from the shooting at issue. However, the shell casings found at the scene matched the .45 caliber and 10mm Glock firearms recovered from the grill. Williams testified McClendon was affiliated with the gang Murder Mob, which is affiliated with Highland Park Piru and was in the area where the shooting occurred; however, he also stated there were no incident reports connecting McClendon directly to either gang.

Scott Tanner, the coordinator of the Juvenile Ombudsmen Division of the Public Defender Commission, testified for the defense, detailing the various programs available to McClendon if his case were transferred to juvenile court, including the possibility of extended juvenile jurisdiction (EJJ). Tanner also explained if McClendon's case was transferred to juvenile court, he would be assessed to determine the programs that would best fit his needs.

2

He also explained that if a juvenile is committed to the Division of Youth Services (DYS), the juvenile is locked down and not free to leave the residential setting; however, in a group-home setting, there is no lock down.

Adriana Brown, McClendon's mother, testified that McClendon is the baby of the family; he is childish, silly, and outgoing, but very respectful; he does not have a father figure and wants to take care of his mother; he is intelligent and attends school at the Hamilton Learning Academy; he was working several jobs to pay for his ankle monitoring because Brown could not afford to pay for it; he had completed the Christian Angels Support program; and he suffers from depression. The defense presented letters from McClendon's teacher, assistant principal, and social worker at Hamilton Learning Academy, stating he had a respectful and positive attitude, was eager to help, and was a model student, as well as a certificate noting he was a nominee for intern of the year in the Little Rock Department of Community Programs 2017 Summer Youth Employment Opportunity.

*McClendon v. State*, 2019 Ark. App. 115, at 2–4, 572 S.W.3d 443, 444–45. The circuit court denied the motion to transfer, and McClendon appealed. Because the circuit court failed to make written findings on all ten factors enumerated in the juvenile-transfer statute, we remanded for the circuit court to make the proper findings. *McClendon, supra.*

In deciding the motion to transfer, the circuit court is to consider the following factors:

(1) The seriousness of the alleged offense and whether the protection of society requires prosecution in the criminal division of circuit court;

(2) Whether the alleged offense was committed in an aggressive, violent, premeditated, or willful manner;

(3) Whether the offense was against a person or property, with greater weight being given to offenses against persons, especially if personal injury resulted;

(4) The culpability of the juvenile, including the level of planning and participation in the alleged offense;

(5) The previous history of the juvenile, including whether the juvenile had been adjudicated a juvenile offender and, if so, whether the offenses were

3

against persons or property, and any other previous history of antisocial behavior or patterns of physical violence;

(6) The sophistication or maturity of the juvenile as determined by consideration of the juvenile's home, environment, emotional attitude, pattern of living, or desire to be treated as an adult;

(7) Whether there are facilities or programs available to the judge of the juvenile division of circuit court that are likely to rehabilitate the juvenile before the expiration of the juvenile's twenty-first birthday;

(8) Whether the juvenile acted alone or was part of a group in the commission of the alleged offense;

(9) Written reports and other materials relating to the juvenile's mental, physical, educational, and social history; and

(10) Any other factors deemed relevant by the judge.

Ark. Code Ann. § 9-27-318(g) (Repl. 2015). The circuit court is required to make written findings on all the above factors. Ark. Code Ann. § 9-27-318(h)(1). However, there is no requirement that proof be introduced against the juvenile on each factor, and the circuit court is not obligated to give equal weight to each of these factors in determining whether a case should be transferred. *D.D.R. v. State*, 2012 Ark. App. 329, 420 S.W.3d 494.

After remand, the circuit court entered an order enumerating the following findings:

1. The seriousness of the alleged offense of battery in the first degree in this case, required prosecution in the criminal division of Circuit Court;

2. The facts of the case indicate the alleged offense was committed in an aggressive, violent and willful manner;

3. This offense was committed against a person as another individual suffered a gunshot wound as a result;

4. Based upon the testimony of Detective Williams, McClendon stated he only fired shots after hearing gunshots. The Court did not conclude that McClendon planned the act; however, from the facts of the case McClendon did participate in hiding evidence;

4

5. McClendon did not have previous history as a juvenile;

6. Addrianna [sic] Brown, the mother of McClendon, testified that he was "childish" *(See Page 48 of 09/27/18 hearing transcript)* and although he worked to help at home, he was not very mature;

7. Based upon the testimony of Mr. Scott Tanner, there are facilities and/or programs available that are likely to rehabilitate McClendon before the expiration of his 21st birthday; however, there are challenges in obtaining residential psychiatric treatment beyond the age of 18. The Court is not convinced that McClendon would take advantage of the programs;

8. In this case, McClendon acted with another individual;

9. The Court did consider the written reports from Hamilton Learning Academy and the City of Little Rock Angels;

10. There was evidence presented of McClendon's involvement in gang activity. McClendon did not see Jaylan Hussein shoot, he only heard what he believed to be gunshots. He saw his friend shoot and McClendon began to shoot. McClendon was sitting on the porch of an individual not known to him; this act put the home owners at risk.

The case has now returned to our court for review.

The circuit court shall order the case transferred to another division of the circuit court only upon a finding by clear and convincing evidence that the case should be transferred. Ark. Code Ann. § 9-27-318(h)(2). Clear and convincing evidence is that degree of proof that will produce in the trier of fact a firm conviction as to the allegation sought to be established. *McClure v. State*, 328 Ark. 35, 942 S.W.2d 243 (1997). We will not reverse a circuit court's decision whether to transfer a case unless it is clearly erroneous. *Nichols v. State*, 2015 Ark. App. 397, 466 S.W.3d 431. A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been committed. *Id*. As we have

5

held many times, appellate courts will not reweigh the evidence presented to the circuit court. *See Clem v. State*, 351 Ark. 112, 90 S.W.3d 428 (2002).

McClendon contends that although there was some evidence to support the circuit court's decision, a review of all the evidence by this court will show that the circuit court clearly erred. McClendon cites his mother's testimony, the circuit court's finding that he had no previous history as a juvenile, and the circuit court's finding that he had not planned to commit the first-degree battery as evidence that the circuit court's decision was clearly erroneous.

What McClendon really asks is for this court to reweigh the factors considered by the circuit court. Here, as required, the court considered each factor, made findings on each factor, and its findings were supported by the evidence. Appellate courts will not reweigh the evidence presented to the circuit court. *See Clem v. State*, *supra*. We hold that the circuit court did not clearly err in denying McClendon's motion to transfer.

Affirmed.

GRUBER, C.J., and WHITEAKER, J., agree.

*William R. Simpson, Jr.*, Public Defender, by: *Clint Miller*, Deputy Public Defender, for appellant.

*Leslie Rutledge*, Att'y Gen., by: *Jason Michael Johnson*, Ass't Att'y Gen., for appellee.