Cite as 2023 Ark. App. 55

# ARKANSAS COURT OF APPEALS
DIVISION I
No. CR-22-99

| | |
|---|---|
| LUTHER SHAW<br><br>APPELLANT<br><br>V.<br><br>STATE OF ARKANSAS<br><br><br>APPELLEE | **Opinion Delivered** February 8, 2023<br><br>APPEAL FROM THE GARLAND COUNTY CIRCUIT COURT<br>[NO. 26CR-21-432]<br><br>HONORABLE MARCIA R. HEARNSBERGER, JUDGE<br><br>AFFIRMED |

## WAYMOND M. BROWN, Judge

Appellant Luther Shaw appeals an order from the Garland County Circuit Court denying his motion to transfer his case to the juvenile division of the circuit court. On appeal, he argues that the circuit court's denial of his transfer motion was clearly erroneous. We affirm.

On June 21, 2021, the State charged Shaw with first-degree battery following an incident that occurred on June 20. On July 28, Shaw, whose date of birth is June 15, 2005, and who was sixteen years old when the alleged offense was committed, filed a motion to transfer the case to the juvenile division of the circuit court. The court held a transfer hearing on October 7.

At the hearing, the State called three witnesses: Kylee Sims, Hot Springs World Class High School principal; Officer Lavon Chapman, Garland County Juvenile Court probation supervisor; and Detective Mark Fallis of the Hot Springs Police Department. Shaw did not call any witnesses at the transfer hearing.

Principal Sims testified regarding Shaw's school records that were admitted into evidence. His record noted numerous absences, six out-of-school suspensions, nine in-school suspensions, three bus suspensions, three corporal punishments, and other forms of reprimand. The multitude of behavioral incidents involved fighting, insubordination, inappropriate language and gestures, drugs, disorderly conduct, and bullying.

On October 25, 2016, a family in need of services ("FINS") petition was filed against Shaw and his mother in the Garland County Circuit Court. The petition was based on ten Hot Springs Intermediate School staff reports of Shaw's problematic behavior in the classroom and on the school bus. The reports resulted from Shaw's defiant and aggressive behavior, including both the threats and use of physical violence against school staff or students.

On November 11, 2016, Shaw was admitted to Pinnacle Point Hospital due to aggressive behavior and threats of severe harm toward his eight-year-old sister. He was discharged on November 19 with instructions to continue medications and outpatient therapy.

On December 6, 2016, February 16, 2017, and March 28, 2017, Shaw and his mother appeared in juvenile court in case number JV-2016-494. On December 6, Shaw was ordered to complete a Hot Springs School District educational program; attend school with no unexcused absences or tardies; continue individual and family counseling; follow all rules at school and home; take all medications as prescribed; and participate in a mentoring program. On February 16, Shaw was ordered to continue to comply with the court's previous orders and to follow all rules imposed by the juvenile-probation office. He was also warned that if his behavior did not improve, he would be placed at the Ouachita Children's Center ("OCC") residential facility. In the order entered on

March 28, the court reiterated its previous orders and warning. On April 12, 2017, the court ordered Shaw's residential placement at OCC.

On May 16, 2017, case number 26JV-2017-270 was filed against Shaw in the Garland County Circuit Court charging him with third-degree battery based on allegations that he struck another juvenile at OCC. He was discharged from OCC and released into his grandmother's custody. On May 23, Shaw was charged in the same case with possession of a controlled substance. He was found delinquent for both offenses and ordered to follow all rules imposed by the juvenile-probation office, complete anger-management classes, continue with the OCC outreach program, and continue with individual and family counseling. A petition for revocation of probation was filed in the case on June 27, alleging that Shaw had violated the condition of his probation requiring him to attend school with no unexcused absences or tardies and obey all school rules because he had been expelled from summer school.

On October 16, 2017, in case number 26JV-2017-407, Shaw was charged with harassment as the result of a neighbor's allegations that he had thrown a glass bottle, which shattered on the neighbor's back porch. Shaw was again found delinquent on October 27 and was committed to the juvenile detention facility for two days, placed on twenty-four months' probation, and ordered to follow all rules imposed by the juvenile-probation office.

Garland County juvenile probation officer Lavon Chapman was assigned to supervise Shaw. Chapman testified that, during his supervision of Shaw, Shaw's mother, grandmother, and grandfather—who lived in Pennsylvania—were very involved in Shaw's life, and after Shaw began

counseling and resumed his medications, he did not have any issues with him.[1]  An order discharging probation and closing the case was entered on June 22, 2018.

On September 11, Shaw was suspended from school for ten days for fighting.  During the 2019–20 school year, Shaw attended high school in Pennsylvania where his grandfather resided.  In August 2020, Shaw enrolled in the Hot Springs World Class High School; however, he was expelled shortly thereafter, in September, and transferred to Better Chances alternative school.

Detective Fallis testified that on the night of June 20, 2021, he was called to the crime scene where a fifteen-year-old female had been shot.  The shooting occurred at a pavilion near a housing project.  Detective Fallis testified that he interviewed the victim at the hospital, where she received surgery and treatment for the gunshot wound that fractured her pelvis and perforated her intestine and colon.  According to the victim, during an argument earlier in the day, Shaw threatened to shoot her and her boyfriend.  That evening, while gathered with friends at the pavilion, Shaw approached her and her boyfriend.  The argument and fighting resumed, and Shaw pulled a gun from his waistband and began shooting, striking the victim in the upper thigh.

Following the hearing on the motion to transfer the case to the juvenile division, on November 16, the circuit court issued written findings denying Shaw's transfer motion via an opinion letter.  An order reflecting the denial was entered on November 29.  In its order, pursuant to Arkansas Code Annotated section 9-27-318(g).[2]

1) *The seriousness of the alleged offense and whether the protection of society requires prosecution in the criminal division of circuit court.*

---

[1]Shaw's school records reflect that, during the time he was under Officer Chapman's supervision, Shaw had five behavioral incidents.

[2](Repl. 2020).

There is no doubt the offense of Battery in the First Degree, a class B felony, is a serious crime in our society. In this case, Defendant threatened to shoot the victim and her boyfriend if he saw them. He later found them at a public pavilion and began an argument with the boyfriend, pulled a black handgun from his waistband and began shooting at them striking victim in the upper thigh with one of the bullets. Victim required surgery because of the gunshot would Defendant inflicted. This is a crime involving forethought, purposeful action, and use of a firearm posing great risk of serious physical injury to all present.

2) *Whether the alleged offense was committed in an aggressive, violent, premeditated, or willful manner.*

Defendant threatened to shoot victim's boyfriend during an early altercation and many hours later carried through on this threat shooting at victim's boyfriend and victim and hitting victim with one of those bullets. These facts support a finding of premeditated, willful, violent, and aggressive actions by the Defendant.

3) *Whether the offense was against a person or property, with greater weight being given to offenses against persons, especially if personal injury resulted.*

Defendant directed violence against victim's boyfriend and victim, shot at both of them and hit victim with one of the bullets causing her to require surgery to repair a fractured pelvis, perforated intestine and colon.

4) *The culpability of the juvenile, including the level of planning and participation in the offense.*

Defendant made a threat, carried a firearm to a public park and proceeded to fire the weapon at those gathered there. Defendant's age did not allow him to legally purchase a firearm, carry a firearm, or use a firearm. Defendant's actions required illegally acquiring a firearm, carrying a firearm illegally and using a firearm in a public city park. All of these actions required planning and preparation.

5) *The previous history of the juvenile, including whether the juvenile had been adjudicated a juvenile offender and, if so, whether the offenses were against persons or property, and any other previous history of antisocial behavior or patterns of physical violence.*

A Family in Need of Services case filed October 25, 2016 against Defendant and his family in Garland County Circuit Court, Juvenile division, case number [ ] 26JV-16-494. The referral came from the Hot Springs Intermediate School because [ ] he received four office referrals and six bus referrals since the beginning of the school year for being aggressive

5

with both staff and other students and severely defiant. Defendant was placed on probation and reviewed frequently until discharged May 30, 2017.

A Petition filed in garland County Circuit Court 26JV-17-270 on May 16, 2017 alleged Defendant Juvenile Delinquent for committing Battey in the Third Degree. This involved Defendant fighting at Ouachita Children's Center where he resided because of the FINS case referred to above. Defendant fought with a juvenile female who alleged Defendant hit her in the mouth twice. Defendant was also charged in the same case with Possession of Marijuana after an incident on Hot Springs Middle School property. The court found Defendant delinquent on both charges and placed him on probation for 24 months.

A Revocation of Probation filed June 27, 2017. Defendant discharged from Probation September 5, 2017 and that case dismissed January 7, 2019.

A Petition filed in 26JV-17-407 charged Defendant with Harassment due to Defendant throwing a glass coke bottle at his neighbor's porch. The court found Defendant delinquent for this crime; sentenced him to two days in the juvenile detention facility and ordered probation. His probation discharged June 22, 2018.

6) *The sophistication or maturity of the juvenile as determined by consideration of the juvenile's home, environment, emotional attitude, pattern of living, or desire to be treated as an adult.*

Defendant's Mother reported in 2017 in 26JV-17-407 no exposure to violence in the home however Defendant has always been the violent one with his behavior; always bullying someone even bullying his sister; no history of maltreatment; a support system in the home; no peer rejection because her son is considered the bully. The Social History and Disposition Recommendations describing Defendant's overall attitude and emotions concluded Defendant does not show any remorse for his actions and does not comply with any intervention requiring him to adjust his behavior or comply with authority.

7) *Whether there are facilities or programs available to the judge of the juvenile division of circuit court that are likely to rehabilitate the juvenile before the expiration of the juvenile's twenty-first birthday.*

Defendant received the following treatment while being supervised in Juvenile Court: anger management, house arrest, probation, mentoring program, counseling, and inpatient treatment with med management, housing at Ouachita Children's Center, "Better Chances" alternative school and juvenile detention. The only thing Defendant did not experience during his years involved with juvenile court is Boot Camp and a commitment to DYS.

8) *Whether the juvenile acted alone or was part of a group in the commission of the alleged offense*.

Defendant acted alone at the time of the offense. It is unknown whom if anyone may have helped him to obtain the firearm he used to cause the injury to the victim.

9) *Written reports and other materials relating to the juvenile's mental, physical, educational, and social history*.

Defendant admitted to Pinnacle Point at eleven (11) years of age in conjunction with the above-referenced FINS case. Upon his discharge, Defendant no longer exhibited or verbalized dangerous, aggressive, acting out behavior; was not suicidal or homicidal; was medically stable and presented no imminent threat to harm self or others.

10) *Any other factors deemed relevant by the judge*.

Defendant left the State of Arkansas from August 2019 until May 2020 and lived in Pennsylvania. When he came back from Pennsylvania, his school expelled him and sent him to Better Chances because of fighting in school in September 2020. He had extensive periods of absence from school.

At some point in time while numerous and continuous opportunities attempted to lead Defendant to a law-abiding life, Defendant chose to take possession of a firearm and carry it with him and actually use it to cause serious physical injury to a young girl.

The COURT FINDS by clear and convincing evidence Defendant's case should be adjudicated in the criminal division of the Circuit Court as filed. Therefore, the court DENIES Defendant's Motion to Transfer to Juvenile Court.

A prosecuting attorney has discretion to charge a juvenile sixteen years of age or older in the criminal division of the circuit court if the juvenile has engaged in conduct that, if committed by an adult, would be a felony.[3] On the motion of the court or any party, the court in which the criminal charges have been filed shall conduct a hearing to determine whether to transfer the case to another division of circuit court having jurisdiction.[4] The moving party bears the burden of proving that the

---

[3]Ark. Code Ann. § 9-27-318(c)(a) (Repl. 2020).

[4]Ark. Code Ann. § 9-27-318(e).

7

case should be transferred to the juvenile division of the circuit court.[5] The circuit court shall order the case transferred to another division of circuit court only upon a finding by clear and convincing evidence that the case should be transferred.[6] Clear and convincing evidence is that degree of proof that will produce in the trier of fact a firm conviction as to the allegation sought to be established.[7] We will not reverse a circuit court's determination of whether to transfer a case unless the decision is clearly erroneous.[8] A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a firm conviction that a mistake has been committed.[9]

At a juvenile-transfer hearing, the circuit court is required to consider all the factors set forth in Arkansas Code Annotated section 9-27-318(g). The circuit court is required to make written findings on each factor.[10] However, there is no requirement that proof be introduced on each factor, and the circuit court is not obligated to give equal weight to each of these factors in determining whether a case should be transferred.[11] In fact, the statute specifically instructs the circuit court to

---

[5]*Kiser v. State*, 2016 Ark. App. 198, 487 S.W.3d 374.

[6]Ark. Code Ann. § 9-27-318(h)(2).

[7]*Woods v. State*, 2018 Ark. App. 576, 565 S.W.3d 124.

[8]*Id.*

[9]*Id.*

[10]Ark. Code Ann. § 9-27-318(h)(1).

[11]*Heard v. State*, 2019 Ark. App. 586, 590 S.W.3d 215.

give greater weight to offenses against persons.[12] It is well settled "that a juvenile may be tried as an adult solely because of the serious and violent nature of the offense."[13] The denial of a juvenile-transfer motion is not clearly erroneous simply because some evidence might weigh in favor of granting the motion.[14] On review, this court will not reweigh the evidence presented to the circuit court.[15]

On appeal, Shaw argues that the circuit court's denial of his motion to transfer was clearly erroneous. He asserts that the court erred in finding that the factors weighed in favor of a criminal prosecution.

We hold that the circuit court did not clearly err by denying Shaw's transfer motion. As required, the court considered and made written findings on each factor outlined in Arkansas Code Annotated section 9-27-318(g). Each of the circuit court's findings was supported by the evidence presented at the transfer hearing.

On appeal, Shaw concedes that by the very nature of the alleged offense of first-degree battery, the first three factors weigh against his motion to transfer. Despite this acknowledgement, Shaw contends that other factors weigh in favor of a juvenile prosecution. Specifically, he argues that his lack of maturity and sophistication; the availability of facilities and programs likely to aid in his rehabilitation prior to the expiration of the juvenile division's jurisdiction; and reports and testimony

---

[12]*See* Ark. Code Ann. § 9-27-318(g)(3).

[13]*Moore v. State*, 2018 Ark. App. 516, at 5, 558 S.W.3d 918, 921.

[14]*See Lindsey v. State*, 2016 Ark. App. 355, 498 S.W.3d 336.

[15]*McClendon v. State*, 2020 Ark. App. 217, 599 S.W.3d 668.

concerning his mental, physical, educational, and social history all weigh in favor of the motion to transfer. Despite his contention, Shaw's concession that the first three factors weigh against him due to the charged offense itself, is alone sufficient to deny his juvenile-transfer motion. Shaw argues that while relevant to the circuit court's determination, "nothing prohibits a juvenile offender who commits a serious violent crime against a person from being transferred to the juvenile division." However, as previously stated, a juvenile may be tried as an adult solely because of the serious and violent nature of the offenses.[16] Here, Shaw was charged with an undisputedly serious and violent offense that resulted in serious physical injury to another person. Following an argument, Shaw threatened to shoot the victim and her boyfriend if he saw them; later, at a public park, he followed through with his threat. The victim required surgery and suffered serious physical injury as a result of Shaw's violent actions. Although Shaw would have the court give greater weight to other factors, we will not reweigh the evidence presented to the circuit court. The denial of a juvenile-transfer motion is not clearly erroneous simply because some evidence might weigh in favor of granting the motion.[17]

For the reasons stated above, we affirm the circuit court's denial of Shaw's motion to transfer his case to the juvenile division of the circuit court.

Affirmed.

ABRAMSON and GLADWIN, JJ., agree.

*Robert M. "Robby" Golden*, for appellant.

---

[16]*Moore*, 2018 Ark. App. 516, 558 S.W.3d 918.

[17]*Lindsey*, *supra*.

*Leslie Rutledge*, Att'y Gen., by: *Rebecca Kane*, Ass't Att'y Gen., for appellee.