Cite as 2026 Ark. 4

# SUPREME COURT OF ARKANSAS

**No.** CR–25–371

| | | |
|---|---|---|
| JONATHAN ROLFE | | **Opinion Delivered:** January 22, 2026 |
| | APPELLANT | APPEAL FROM THE ST. FRANCIS COUNTY CIRCUIT COURT [NO. 62CR-23-61] |
| V. | | |
| | | HONORABLE CHRISTOPHER W. MORLEDGE, JUDGE |
| STATE OF ARKANSAS | APPELLEE | |
| | | <u>AFFIRMED</u>. |

**SHAWN A. WOMACK, Associate Justice**

This appeal challenges the St. Francis County Circuit Court's order denying Jonathan Rolfe's motion to transfer his capital-murder case to the juvenile division. In this interlocutory appeal, Rolfe advances two points for reversal. He first argues that Arkansas Code Annotated section 9-27-318 is unconstitutional under Amendment 80 and the separation-of-powers doctrine. Because this court rejected that exact claim in *C.B. v. State*, 2012 Ark. 220, 406 SW.3d 796, he asks the court to revisit the issue. Alternatively, he maintains that the circuit court's order is deficient and that it erred in declining to transfer his case. Rolfe's first argument is unpreserved for appellate review. On the remaining issues, which are preserved, we affirm.

## I.    *Facts and Procedural Background*

On February 16, 2023, the State charged seventeen-year-old Jonathan Rolfe in the St. Francis County Circuit Court with three counts of capital murder and one count of felony theft. The charges arise from events occurring on November 28, 2022, when Rolfe's

mother, Shalonda Barton; her boyfriend, JaTerrence Wright; and his twelve-year-old sister (MV) were shot and killed while they slept. His mother's Cadillac was also taken.

Law enforcement became aware of the shootings after Rolfe appeared at his paternal grandmother's home during the early morning hours with his four-year-old sister and reported that his mother had been shot. Deputies located the residence, entered, and discovered the bodies of Rolfe's twelve-year-old sister, his mother, and her boyfriend. The child had suffered a gunshot wound to the forehead. Rolfe's mother had sustained multiple gunshot wounds and had an apparent defensive injury, and her boyfriend had been shot in the back. Several spent 9mm shell casings were recovered in the bedroom. There were no signs that robbery motivated the crime.

Shortly thereafter, officers located Rolfe at the home of a teenage acquaintance after a prowler complaint. Police also found his mother's Cadillac abandoned nearby, with a 9mm Glock pistol recovered from the vehicle. A key fob matching the Cadillac was later found concealed in the patrol vehicle that transported Rolfe; he was the only occupant of that vehicle that day. His clothing tested positive for gunshot residue, and blood on his shoes matched that of his twelve-year-old sister. Rolfe denied entering the home, asserting that he went there only after receiving a call from an unknown person. Investigators also interviewed Rolfe's four-year-old sister. She reported that Rolfe came to the house that night, took her outside to a black car, went back into the house, and later drove her to their grandmother's house.

Rolfe moved to transfer the case to the juvenile division of circuit court. At the juvenile-transfer hearing, the defense presented testimony regarding Rolfe's school record,

personal history, mental health, and conduct while detained. Educators and community members generally described Rolfe as academically capable and respectful, though some observed changes in his demeanor shortly before the offenses. A psychologist, Dr. Caren Moore, testified that Rolfe suffered from depression, anxiety, trauma-related symptoms, and suicidal ideation, and stated that whether he was beyond rehabilitation was uncertain. A juvenile-intake officer, Sadie Blackwell, testified that risk-assessment testing reflected significant emotional instability and trauma, while also identifying protective factors including family support and prior positive involvement in school and structured activities. A juvenile ombudsman, Brooke Digsby, testified as to services available within the juvenile system and its jurisdictional limits, including that juvenile jurisdiction ends at age twenty-one.

Following the hearing, the circuit court denied the motion. On interlocutory appeal, the court of appeals determined that the circuit court had failed to address one of the statutorily required factors and remanded for further written findings under Arkansas Code Annotated section 9-27-318(g)(9) in an opinion dated December 11, 2024.[1] The circuit court entered an amended order on March 26, 2025, denying the transfer. On this, his second appeal, Rolfe moved to transfer the case to the supreme court, which we unanimously granted on November 6, 2025.

II.    *Discussion*

Rolfe presents two arguments on appeal. He first contends that Arkansas Code Annotated section 9-27-318—i.e., the statutory juvenile-transfer framework—violates

---

[1]*Rolfe v. State*, 2024 Ark. App. 603, 703 S.W.3d 510.

3

Amendment 80 and the separation-of-powers doctrine, and he asks this court to overrule *C.B. v. State*, 2012 Ark. 220, 406 SW.3d 796. In the alternative, Rolfe argues that, even if the statute is constitutional, the circuit court's order is deficient, and it erred in denying his motion to transfer.

### A. Challenge to Ark. Code Ann. § 9-27-318

#### 1. *Rolfe's claim is unpreserved for appellate review*

Rolfe did not raise any separation-of-powers challenge to Arkansas Code Annotated section 9-27-318 either in the circuit court or in his prior interlocutory appeal. He concedes as much in his brief. This was fatal to his claim.

At the time of the circuit court's transfer ruling, Arkansas Code Annotated section 9-27-318 governed when and how a case involving a juvenile could be transferred between divisions of circuit court.[2] Subsection (e) provided that, [u]pon the motion of the court or of any party, the judge of the division of circuit court in which a delinquency petition or criminal charges have been filed shall conduct a transfer hearing to determine whether to transfer the case to another division of circuit court.[3] Subsection (h) required the court, after considering the statutory factors set out in subsection (g), to make written findings on

---

[2]Ark. Code Ann. §§ 9-27-306 and 9-27-318 were repealed by Act 518 of 2025 § 2, which generally reorganized the Arkansas Juvenile Code into a new chapter and subchapter of Title 9. However, Ark. Code Ann. §§ 9-27-306 and 9-27-318 were in effect when the circuit court made its transfer ruling, and they govern this appeal.

[3]Ark. Code Ann. § 9-27-318(e) (Repl. 2020) (current version at § 9-35-412 (Supp. 2025).

each factor and to order transfer only "[u]pon a finding by clear and convincing evidence that a case should be transferred."[4]

On appeal, Rolfe argues this statute violates the separation of powers, citing article 4, section 2, and Amendment 80, section 3. In doing so, he relies primarily on *Johnson v. Rockwell Automation*, 2009 Ark. 241, 308 S.W.3d 135. However, this court squarely rejected a separation-of-powers challenge to section 9-27-318 under article 4, section 2, and Amendment 80 in *C.B. v. State*, 2012 Ark. 220, 406 S.W.3d 796. The juvenile there argued—much as Rolfe does now—that the statute impermissibly dictated court procedure in an area reserved to the judiciary. This court disagreed. It held that the juvenile-transfer scheme is "substantive law, rooted in public policy, that is properly addressed by the General Assembly, which is the policy-making branch of the government."[5] The court emphasized that section 9-27-318 defines when a juvenile may be prosecuted as an adult, which offenses trigger that possibility, and which considerations guide that allocation decision. The court held those are substantive choices about the scope of criminal liability and punishment, not an intrusion into the court's rulemaking power over "pleading, practice and procedure" under Amendment 80, section 3.

We decline to opine on the merits of this argument, however, because it is a fundamental principle of criminal appellate review that constitutional arguments must be

---

[4]*Id.* § 9-27-318(h).

[5]*C.B. v. State*, 2012 Ark. 220, at 5–6, 406 S.W.3d 796, 799.

raised at the first opportunity and ruled upon by the circuit court to be preserved for appeal.[6]

Because Rolfe never presented his separation-of-powers challenge to the circuit court, there is no adverse ruling for this court to review. His constitutional claim therefore fails.

Rolfe attempts to recast his argument as one of subject-matter jurisdiction to save his constitutional claim from glaring procedural deficiencies. That effort falls short. Subject-matter jurisdiction is "the power of the court to hear and determine the subject matter in controversy between the parties."[7] Amendment 80 establishes the circuit courts "as the trial courts of original jurisdiction of all justiciable matters not otherwise assigned," including both criminal and juvenile matters.[8] Here, the State filed in the circuit court a proper information charging Rolfe with capital murder and theft. Once a valid charge is filed, the circuit court has subject-matter jurisdiction to hear the case.[9] Whether the case should proceed in the criminal or juvenile division is a question of how that jurisdiction is exercised—not whether it exists. That is not a subject-matter-jurisdiction defect that may be raised at any time. In sum, because the separation-of-powers argument was not raised and preserved below, this court—as an appellate court—declines to consider it now in this criminal appeal.

---

[6] *See, e.g.*, *White v. State*, 2023 Ark. 90, 9, 667 S.W.3d 533, 540 (citing *Hamilton v. State*, 348 Ark. 532, 537–38, 74 S.W.3d 615, 618 (2002)).

[7] *Williams v. Kelley*, 2016 Ark. 67, at 3, 482 S.W.3d 717, 719.

[8] Ark. Const. amend. 80, § 6; *see also* amend. 80, § 19.

[9] *See Rawlins v. State*, 2024 Ark. App. 83, at 5, 684 S.W.3d 602, 607.

B.     The Circuit Court's Order is Neither Deficient
Nor Does It Amount to Reversible Error

Rolfe next argues, under a single point heading, that the circuit court's amended order remains deficient and, alternatively, that the denial of his motion to transfer was clearly erroneous.  Neither contention has merit.

We review a circuit court's denial of a juvenile-transfer motion for clear error.[10]  A finding is clearly erroneous only when, despite supporting evidence, we are left with a firm and definite conviction that a mistake was made.[11]  The prosecutor was authorized to charge Rolfe in the criminal division because he was over sixteen at the time of the alleged conduct.[12]  Once he moved to transfer his case to the juvenile division, Rolfe bore the burden of proving by clear and convincing evidence that his case should be transferred.[13]

The statute required the circuit court to consider the ten factors listed in § 9-27-318(g) and to make written findings.[14]  But the court is neither required to give equal weight to each factor nor required to receive evidence on every factor.[15]  The statute expressly directs greater weight to offenses against persons, § 9-27-318(g)(3), and it is well settled that

[10] *Otis v. State*, 355 Ark. 590, 605, 142 S.W.3d 615, 623 (2004).

[11] *Clinkscale v. State*, 2018 Ark. App. 271, at 7, 550 S.W.3d 409, 414.

[12] Ark. Code Ann. § 9-27-318(c)(1).

[13] Ark. Code Ann. § 9-27-318(e), (h)(2); *Clinkscale*, 2018 Ark. App. 271, at 7, 550 S.W.3d at 414.

[14] Ark. Code Ann. § 9-27-318(h)(1).

[15] *Heard v. State*, 2019 Ark. App. 586, at 5, 590 S.W.3d 215, 218.

the serious and violent nature of an offense alone may justify denying transfer.[16] On appeal, we do not reweigh evidence.[17]

      1. *The amended order satisfies statutory requirements and the law of the case*

Rolfe first contends the amended order is still deficient and warrants another remand. That argument is confined by the law-of-the-case doctrine. The court of appeals previously addressed the adequacy of the order and remanded only for supplementation under § 9-27-318(g)(9).[18] On remand, the circuit court complied. The ninth factor requires consideration of the following:

> (9) Written reports and other materials relating to the juvenile's mental, physical, educational, and social history[.]

The circuit court's amended order noted in paragraph 4 that Dr. Moore's psychological evaluation report was admitted into evidence in conjunction with her testimony. The circuit court also noted in paragraph 6 that Sadie Blackwell's SAVRY Assessment report was entered into evidence. Consequently, the circuit court's order properly considered this statutory factor. The statute does not require the court to track the statutory language verbatim or address each factor in sequential order.[19] It requires

---

[16]*Moore v. State*, 2018 Ark. App. 516, at 5, 558 S.W.3d 918, 921.

[17]*McClendon v. State*, 2020 Ark. App. 217, at 6, 599 S.W.3d 668, 672.

[18]*See Scott v. State*, 2019 Ark. 269, at 4–5, 584 S.W.3d 669, 673.

[19]*Shaw v. State*, 2023 Ark. App. 55, 660 S.W.3d 596.

meaningful written consideration of each factor, and the amended order reflects such consideration. No further remand is required.[20]

## 2. *The circuit court did not clearly err in denying transfer*

The court's written findings demonstrate compliance with § 9-27-318(g); thus, the circuit court did not clearly err in denying transfer. The first four factors concern the seriousness, violent nature, and culpability related to the offense, and the eighth factor concerns whether the juvenile acted alone.[21] The court found these factors weighed heavily against transfer in paragraphs 1, 2, 8, and 9 of the order. Indeed, it emphasized that Rolfe is charged with three counts of capital murder—the State's gravest offense—committed in a violent and deliberate manner, against persons, and that he allegedly acted alone. These findings track the statutory directive that crimes against persons carry heightened weight and

---

[20]At the March 3, 2025, hearing, the circuit court referred to the court of appeals' remand instructions as stupid and ignorant. Such comments are unprofessional and unbecoming of a member of the judiciary. We caution the circuit court from making any such comments in the future. *See, e.g.*, *Robinson Nursing & Rehab. Ctr., LLC v. Phillips*, 2023 Ark. 175, at 7–8, 678 S.W.3d 27, 32 ("Rather than providing this court with specific findings, over half the circuit court's . . . order is devoted to making denigrating comments about the justices who were in the majority in *Phillips III*. Such action by the circuit court violates Rules 1.2 and 2.2 of the Code of Judicial Conduct and merits a rebuke by the judiciary.").

[21]The first four statutory factors, together with the eighth factor, all involve the nature of the charged offense, culpability, and involvement of the juvenile: "(1) The seriousness of the alleged offense and whether the protection of society requires prosecution in the criminal division of circuit court; (2) Whether the alleged offense was committed in an aggressive, violent, premeditated, or willful manner; (3) Whether the offense was against a person or property, with greater weight being given to offenses against persons, especially if personal injury resulted; (4) The culpability of the juvenile, including the level of planning and participation in the alleged offense; . . . (8) Whether the juvenile acted alone or was part of a group in the commission of the alleged offense[.]" Ark. Code Ann. § 9-27-318(g)(1)–(4) & (8).

9

align with this court's precedent holding that the violent and serious nature of an offense alone may justify adult prosecution.[22]

The fifth factor concerns the juvenile defendant's history.[23] The court acknowledged Rolfe's lack of adjudicated juvenile history but also considered evidence indicating a high risk of reoffending in paragraph 6 of the order. The sixth and seventh factors concern maturity and rehabilitative prospects.[24] The court credited testimony indicating age-appropriate functioning and found no persuasive proof that rehabilitation within the juvenile system was likely to occur before his twenty-first birthday. It also noted unstable family circumstances and environmental factors relevant to those considerations. These findings were noted in paragraphs 3 through 7 of the amended order.

For the ninth factor—written reports and evaluative materials— as noted in section B(1) above, the amended order expressly addressed the psychological evaluation and SAVRY risk assessment, satisfying § 9–27–318(g)(9). And although the order did not

---

[22]*Moore*, 2018 Ark. App. 516, at 5, 558 S.W.3d at 921.

[23]The fifth statutory factor requires consideration of the following: "(5) The previous history of the juvenile, including whether the juvenile had been adjudicated a juvenile offender and, if so, whether the offenses were against persons or property, and any other previous history of antisocial behavior or patterns of physical violence[.]" Ark. Code Ann. § 9–27–318(g)(5).

[24]The sixth and seventh statutory factors are related, and require consideration of the following: "(6) The sophistication or maturity of the juvenile as determined by consideration of the juvenile's home, environment, emotional attitude, pattern of living, or desire to be treated as an adult; (7) Whether there are facilities or programs available to the judge of the juvenile division of circuit court that are likely to rehabilitate the juvenile before the expiration of the juvenile's twenty-first birthday[.]" Ark. Code Ann. § 9–27–318(g)(6)–(7).

expressly rely on § 9-27-318(g)(10)'s "catch-all," it expressly stated that all statutory factors were considered with appropriate weight.

In sum, Rolfe's remaining challenge merely reflects disagreement with how the circuit court weighed the factors. We note that the court was entitled to weigh heavily the seriousness, violence, risk to public safety, and limited likelihood of rehabilitation. That approach is consistent with the statute and long-settled caselaw.[25] Finally, to the extent Rolfe attempts to inject sufficiency-of-the-evidence concerns, a transfer hearing is not a probable-cause determination and does not adjudicate guilt.[26]

In sum, the amended order demonstrates meaningful statutory compliance, and the denial of transfer was not clearly erroneous. The ruling is affirmed.

Affirmed.

*Brent P. Gasper*, Ark. Public Defender Comm'n, for appellant.

*Tim Griffin*, Att'y Gen., by: *Christopher R. Warthen*, Ass't Att'y Gen., for appellee.

---

[25] *Lindsey v. State*, 2016 Ark. App. 355, at 9, 498 S.W.3d 336, 342.

[26] *Brown v. State*, 330 Ark. 603, 607, 954 S.W.2d 273, 275 (1997); *R.F.R. v. State*, 2009 Ark. App. 583, at 8, 337 S.W.3d 547, 551.