Cite as 2026 Ark. 66

# SUPREME COURT OF ARKANSAS

No. CR–25–564

| | | |
|---|---|---|
| STATE OF ARKANSAS | | **Opinion Delivered:** April 16, 2026 |
| | APPELLANT | APPEAL FROM THE PULASKI COUNTY CIRCUIT COURT [NO. 60CR-25-987] |
| V. | | |
| MINOR CHILD | | HONORABLE LATONYA HONORABLE, JUDGE |
| | APPELLEE | <u>REVERSED AND REMANDED</u>. |

**NICHOLAS J. BRONNI, Associate Justice**

Appellee Minor Child is charged with the capital murder and aggravated robbery of a fifteen-year-old victim. MC was charged in Pulaski County Circuit Court, but at MC's request, his case was transferred to the circuit court's juvenile division. The State appeals, arguing the circuit court erred when it transferred MC's case.

Both parties acknowledge this appeal is foreclosed by *State v. A.G.*, 2011 Ark. 244, 383 S.W.3d 317. Reexamining that decision at the State's urging, we conclude it conflicts with the plain language of our constitution, overrule it, and hold that the State's appeal is proper. On the merits, we likewise agree with the State that the circuit court clearly erred in granting MC's transfer motion, and accordingly, we vacate the circuit court's transfer order and remand for further proceedings not inconsistent with this opinion.

## Facts and Procedural Background

This case began with a January 28, 2025 call to law enforcement reporting a homicide on Stanton Road in Little Rock. When officers arrived on scene, they found the fifteen-

year-old victim in the passenger seat of a nearby car, dead from a gunshot wound to his right shoulder. Following an investigation, the State charged MC with capital murder and aggravated robbery in Pulaski County Circuit Court.

MC moved to transfer his case to the juvenile division pursuant to the then-existing juvenile transfer statute. *See* Ark. Code Ann. § 9-27-318 (Repl. 2020) (repealed) (current version at Ark. Code Ann. § 9-35-412); *see also Rolfe v. State*, 2026 Ark. 4, at 5 n.2, 726 S.W.3d 589, 592 n.2. To obtain a transfer under that provision (and the current one), a movant must demonstrate by clear and convincing evidence that transfer is appropriate. *See* Ark. Code Ann. § 9-27-318(h)(2) (Repl. 2020); Ark. Code Ann. § 9-35-412(h)(2) (Supp. 2025). And in determining whether a movant has made that showing, the circuit court must consider and make "written findings" on ten "factors": (1) "[t]he seriousness of the offense"; (2) "whether the offense was committed in an aggressive, violent, premeditated, or willful manner"; (3) whether the offense was against a person or property; (4) the juvenile's culpability; (5) the juvenile's prior criminal history; (6) the juvenile's prospects for rehabilitation; (7) the juvenile's "sophistication and maturity"; (8) "[w]hether the juvenile acted alone or as part of a group"; (9) other reports and materials "relating to the juvenile's mental, physical, educational, and social history"; and (10) "[a]ny other factors deemed relevant." Ark. Code Ann. § 9-27-318(g)–(h)(1) (Repl. 2020); Ark. Code Ann. § 9-35-412(g)–(h)(1) (Supp. 2025).

To support his transfer motion, MC presented testimony from three witnesses—his mother, a juvenile ombudsman, and the acting chief probation officer with the Pulaski County Juvenile Court—and submitted two letters from other supporters. Collectively,

2

MC's evidence showed that (1) other juveniles facing similar charges had previously been committed to the Division of Youth Services; (2) if MC was to be adjudicated delinquent in the juvenile system, he would be eligible for various rehabilitative services; (3) MC was doing well in school; (4) MC had no prior criminal history; and (5) MC had otherwise behaved appropriately while in custody.

The State opposed MC's transfer request and offered testimony from Detective Chris Henderson about the investigation and violent nature of the victim's death. Detective Henderson testified that he responded to a reported homicide on Stanton Road and found the victim dead with a gunshot wound to his right shoulder. He explained that—based on information from the caller who contacted law enforcement—MC became the sole suspect. He also testified that MC had stayed with his grandmother on the night of the murder and that police had found a .380-caliber pistol inside the home and a .380 shell casing outside the home. MC's mother additionally admitted on cross-examination that MC owned a firearm, though the record on appeal does not reveal the caliber.

The circuit court granted MC's transfer motion, concluding in a written order that MC had carried his burden of establishing by clear and convincing evidence that the case should be transferred to the juvenile division. In so doing, it made specific written findings on nine of the ten factors enumerated in the juvenile transfer statute—including, as particularly relevant here, explaining that it found "no evidence" whether MC's alleged murder of the victim was committed in an aggressive, violent, premeditated, or willful manner. It did not make specific written findings discussing "[a]ny other factors deemed relevant."

Relying on the juvenile transfer statute's language permitting either party to "appeal from a transfer order," the State appeals that decision. *See* Ark. Code Ann. § 9-27-318(l) (Repl. 2020) ("[a]ny party may appeal from a transfer order"); Ark. Code Ann. § 9-35-412(l) (Supp. 2025) (same).

**Discussion**

This case presents two issues. First, can the State appeal the circuit court's transfer order? Second, did the circuit court clearly err in granting the transfer? The answer to both questions is yes, and we reverse and remand.

The State's Appeal is Proper

We begin with the jurisdictional issue: Can the State appeal the transfer decision? The juvenile transfer statute enacted by the General Assembly unambiguously says that it can. *See* Ark. Code Ann. § 9-27-318(l) (Repl. 2020) ("[a]ny party may appeal from a transfer order"); Ark. Code Ann. § 9-35-412(l) (Supp. 2025) (same). But in *State v. A.G.*, this court declared that the General Assembly lacked the power to authorize such appeals. 2011 Ark. 244, at 4–6, 383 S.W.3d 317, 319–20. This court did not explain that conclusion or cite any constitutional provision to support it. The State therefore asks us to examine the issue anew. Doing so, we conclude that *State v. A.G.* conflicts with the plain language of the constitution, overrule that unreasoned decision, and hold that the State may appeal the circuit court's transfer decision.

A. Start with our constitution. In 2000, the people of Arkansas adopted amendment 80, which provides the foundation for the modern Arkansas Judiciary. That amendment creates "a right of appeal to an appellate court from the Circuit Courts" and authorizes

4

"other rights of appeal as may be provided by Supreme Court rule or by law." Ark. Const. amend. 80, § 11. The first half of that provision—recognizing "a right of appeal to an appellate court from the Circuit Courts"—is about final judgments, and in a nutshell, it authorizes appeals from final judgments. *See, e.g.*, *Ozark Mountain Solid Waste Dist. v. JMS Enters., Inc.*, 2021 Ark. 4, at 5, 614 S.W.3d 449, 451 ("[A]n appeal may be taken from a final judgment or decree entered by the circuit court."). This case does not concern a final judgment, and as such, that language is not at issue here.

Rather, we are concerned with the second half of that provision, the one recognizing "other rights of appeal as may be provided by Supreme Court rule or by law." That provision grants both this court (by rule) and the General Assembly (by law) the power to authorize additional kinds of appeals. Indeed, amendment 80's use of the disjunctive "or" signals two alternative sources of authority—by law and by rule. *See Standridge v. Fort Smith Pub. Schs.*, 2025 Ark. 42, at 5, 708 S.W.3d 773, 777 ("The word 'or' is almost always disjunctive, that is, it is generally used to indicate an alternative." (internal quotation marks omitted)). And no one could plausibly dispute that "an act of the legislature is a law." *Proprietors of Charles River Bridge v. Proprietors of Warren Bridge*, 36 U.S. 420, 650 (1837); *accord Ark. State Bd. of Election Comm'rs v. Pulaski Cnty. Election Comm'n*, 2014 Ark. 236, at 14, 437 S.W.3d 80, 88–89 ("The legislative branch of our state government has the power and the responsibility to proclaim the law through statutory enactments."). So we conclude that, on its face, amendment 80 grants both this court and the General Assembly the power to authorize appeals from non-final orders.

5

B. We likewise conclude that the General Assembly exercised that power when it adopted the juvenile transfer statute's language permitting appeals. As discussed above, that language plainly and unambiguously provides that "[a]ny party may appeal from a transfer order." Ark. Code Ann. §§ 9-27-318(l) (Repl. 2020); 9-35-412(l) (Supp. 2025). Moreover, no one disputes that provision applies here and that under it the State was entitled to appeal the circuit court's transfer order.

Normally, that would be the end of the jurisdictional matter, and we would move on to the merits. But that is not the case because, as both parties acknowledge, *State v. A.G.*, 2011 Ark. 244, 383 S.W.3d 317, held the juvenile transfer statute's appeal provision unconstitutional. It is not clear why. That case does not cite the Arkansas Constitution or discuss any constitutional language that provision supposedly violated—let alone discuss amendment 80. *See id.* On the contrary, it simply declares the appeal provision of the juvenile transfer statute unconstitutional on the ground that it "direct[ly] conflicts with" this court's rules only permitting a very narrow class of interlocutory appeals. *Id.* at 6, 383 S.W.3d at 320; *see* Ark. R. App. P. –Crim. 3(a) (permitting State interlocutory appeals on three issues). Far from explaining why that supposed conflict rendered the juvenile transfer statute unconstitutional, *State v. A.G.* simply string cited a series of pre-amendment 80 separation-of-powers cases, declared that those cases somehow applied, and announced *sans* analysis a conclusion. *See id.*

That is not how we resolve constitutional questions. Instead, "[c]onstitutional analysis must begin with 'the language of the instrument[.]'" *Dobbs v. Jackson Women's Health Org.*, 597 U.S. 215, 235 (2022) (quoting *Gibbons v. Ogden*, 9 Wheat. 1, 186–89, 6

6

L.Ed. 23 (1824)); *Taylor v. Ferguson*, 2025 Ark. 180, at 9, 722 S.W.3d 498, 503 ("[W]hen interpreting a constitutional provision, we must look to the natural meaning of the text as it would have been understood at the time of its adoption." (cleaned up)). Doing so, *State v. A.G.* should have begun with constitutional text and considered amendment 80's language authorizing both this court and the General Assembly to provide for rights of appeal. It is not clear why *State v. A.G.* did not do that.[1] But either way, we are bound by constitutional text, not this court's prior blunder, and we now overrule *State v. A.G.* *See State v. Good Day Farm Ark., LLC*, 2025 Ark. 207, at 12, 725 S.W.3d 1, 8 (overturning court's prior "refus[al] to follow the plain text"). Any other approach treats our constitution not as a "written document" but as "a set of civic values and norms" determined by judges— and we firmly reject that approach. *See Wis. Just. Initiative, Inc. v. Wis. Elections Comm'n*, 990 N.W.2d 122, 130 (Wis. 2023).

C. For his part, MC makes a different argument, claiming the entire juvenile transfer statute—not just the appeal provision—is unconstitutional. He grounds that claim on amendment 67, which gives the General Assembly the power to "define jurisdiction of matters relating to juveniles," and amendment 80's language giving this court the power to "prescribe the rules of pleading, practice and procedure for all courts." He claims that, in combination, those provisions grant this court the sole power to determine whether a case belongs in juvenile or adult court.

---

[1]It is unclear whether the court somehow missed that plainly relevant provision, simply opted to ignore amendment 80 in favor of some vague notion of the judicial role, failed to look beyond the four corners of the parties' briefing, or did some combination of those things.

We rejected this argument in *C.B. v. State*, 2012 Ark. 220, at 5–6, 406 S.W.3d 796, 799–800, explaining that the juvenile transfer statute does not merely dictate the procedure for how a juvenile's rights are enforced. It establishes standards for determining whether an offender should be tried as a juvenile, and such decisions—and the mechanisms for making those determinations—are for the General Assembly to decide. *See id.* (holding the juvenile transfer statute embodies "substantive law that is rooted in public policy" and concerns "questions of policy . . . to be addressed by the General Assembly, which is the policy-making branch of government"). MC does not offer any basis for overturning that decision, like claiming we failed to acknowledge a controlling constitutional provision or showing that our prior approach is unworkable. *See Good Day Farm*, 2025 Ark. 207, at 12, 725 S.W.3d 1, 8; *Evans v. Harrison*, 2025 Ark. 164, at 5, 721 S.W.3d 753, 756 (correcting precedent that ignored a "clear and unmistakable conflict" between a statute and the constitution); *Zinger v. Terrell*, 336 Ark. 423, 430, 985 S.W.2d 737, 741 (1999) (this court is not required to stand by unworkable precedent). Nor is it clear that adopting MC's argument would help him since it would render the very statute that he relied on below unconstitutional and thereby potentially void his transfer. We reject MC's invitation to overturn our decision in *C.B. v. State*.

<u>The Circuit Court Erred in Granting MC's Transfer Motion</u>

We next consider the merits. We review decisions granting or denying juvenile-transfer motions for clear error, *Rolfe*, 2026 Ark. 4, at 7, 726 S.W.3d at 593, and applying that standard, we conclude that the circuit court clearly erred when it found the State failed

8

to present any evidence on whether MC's alleged offense was committed in an aggressive, violent, premeditated, or willful manner. We reverse and remand.

The State makes two arguments for reversal. First, although the State acknowledges the circuit court made written findings on the first nine factors listed in the juvenile transfer statute, it argues that the court's failure to make written findings on the tenth factor, "[a]ny other factors deemed relevant," warrants reversal. That argument is meritless. To be sure, the statute requires the circuit court to make "written findings on all of the factors under subsection (g) of this section." Ark. Code Ann. § 9-27-318(h)(1). But the tenth factor is a "catch-all" provision that merely permits circuit courts to consider additional factors beyond those already enumerated in the statute. *See Rolfe*, 2026 Ark. 4, at 11, 726 S.W.3d at 593. Thus, by definition, that last factor is implicated—and a written finding required—only when the circuit court considers additional factors. Applying that principle here, the State's argument fails because no one claims that the circuit court considered additional, unenumerated factors in granting MC's transfer motion and, as a result, no written finding was necessary.

Second, the State argues that the circuit court clearly erred when it found "no evidence was presented as to the manner of death or cause of death by homicide." Examining the record on this point, we "are left with a firm and definite conviction that a mistake was made." *Id.* at 4. The State presented direct testimony from Detective Henderson that the victim died by a gunshot wound to his shoulder. That is not, as the circuit court concluded, "no evidence" concerning the manner of death of the alleged victim. Instead, that evidence clearly shows that the alleged offense was committed in an

9

aggressive, violent, premeditated, or willful manner. As we have previously explained, "firing a gun at an occupied vehicle[] [is] unquestionably an offense involving violence." *Jones v. State*, 332 Ark. 617, 622, 967 S.W.2d 559, 561 (1998). Nor was the circuit court's erroneous finding immaterial to its decision to grant the transfer motion. After all, a circuit court's decision to deny a transfer motion may be based solely on the nature of the offense. *C.B.*, 2012 Ark. 220, at 16, 406 S.W.3d at 805. By failing to properly acknowledge the evidence on this factor, the circuit court clearly erred in granting MC's motion to transfer the case to the juvenile division. We reverse and remand on this point.

## Conclusion

We conclude that our prior unreasoned decision in *State v. A.G.* conflicts with the plain language of our constitution, overrule that case, and hold that the State's appeal is proper. We likewise conclude that the circuit court clearly erred in granting MC's transfer motion, vacate the circuit court's transfer order, and remand for further proceedings not inconsistent with this opinion.

Reversed and remanded.

BAKER, C.J., and HUDSON and WOOD, JJ., dissent.


**KAREN R. BAKER, Chief Justice, dissenting.** I must dissent from the majority's decision to reverse and remand. Instead, I would decline to reach the merits of this case and dismiss because it is not a proper State appeal. As I previously stated in my concurring and dissenting opinion in *State v. A.G.*, 2011 Ark. 244, at 7, 383 S.W.3d 317, 321, the State

may appeal from a transfer order. However, similar to *A.G.*, the resolution of the issues in the present appeal turns on facts unique to this case. Accordingly, I would dismiss this appeal.

**RHONDA K. WOOD, Justice, dissenting.** I agree with the majority that the State may appeal from a juvenile-transfer order. But I disagree that the circuit court's decision to transfer the case to the juvenile division was clearly erroneous. The majority opinion rests on faulty legal and factual assumptions. These assumptions lead to an opinion that ignores our well-settled precedents. I must dissent.

First, the majority's brief analysis finding a clear error stems from its own misinterpretation of the facts. The majority states that the circuit court erred when it found "no evidence was presented to the manner of death or cause of death by homicide." The majority explains that the State presented this evidence. But let's consider the testimony. The State presented one witness at the hearing—Detective Henderson. His testimony about the "manner and cause of death" is as follows:

Q: And what – – did you respond to the scene?

A: Yes, sir.

Q: Okay. And what injuries did Mr. Staats sustain?

A: He sustained one gunshot wound to his right shoulder.

The majority reverses because it believes the circuit court should have found evidence on the manner and cause of death. But the State presented no such evidence. The detective only testified about his visual impressions when he responded to the scene.[1] This

_____

[1]Even the Information does not contain an allegation as to the manner and cause of death. Also, it is even more egregious that the majority suggests shots were fired at an

is not how we characterize manner-and-cause-of-death evidence. We generally apply those terms to the medical examiner's testimony, who, after being qualified as an expert, can testify how and why the victim died.[2] This is obviously why the circuit court found no evidence about the manner and cause of death.

Second, even if the majority believes the testimony was sufficient, this evidence does not matter. The statutory juvenile-transfer scheme does not require this finding. Even the State concedes that the manner and cause of death "*is not a factor for the court to consider.*" The State believes the circuit court should not have even mentioned it at all. Yet the majority reverses because it disagrees with how the circuit court interpreted this evidence.

Statutorily, the relevant factor is whether the offense was committed in an aggressive, violent, premeditated, or willful manner. And although the circuit court explained that it lacked specific facts about the homicide, the court acknowledged the violent nature of the offense:

> Whether that offense was committed in an aggressive or violent manner. If it is in fact a homicide, and let me say for the record, it's been charged as a homicide. But there's been no evidence in this hearing to state whether or not the manner of death and the cause of death was by homicide. So I take that into account as well. *Noting that anytime someone is killed, if in fact that is what occurred, then that is inherently, as Mr. Brown stated, a violent and aggressive manner.*

(Emphasis added.) This ruling could not have been clearer.

---

occupied vehicle. That was not in the record either. Nor do we assume finding a victim somewhere means the act occurred there.

[2]*See, e.g.*, *Tait v. State*, 2026 Ark. 28, at 3; *Airsman v. State*, 2014 Ark. 500, at 17, 451 S.W.3d 565, 575; *Camp v. State,* 2011 Ark. 155, at 15, 381 S.W.3d 11, 19; *Fudge v. State,* 341 Ark. 759, 765, 20 S.W.3d 315, 318 (2000).

The circuit court recognized that murders are inherently violent and aggressive. The circuit court just weighed the other factors more significantly in favor of a transfer.[3] I find it unsettling that, after the circuit court deliberately and thoughtfully went through each factor and explained its reasoning, the majority can set it aside over a tangential disagreement. The detailed findings from the bench comprise six pages of the record transcript. This court should respect the work of circuit judges and make an effort to understand their rulings. Equally frustrating is the majority's decision to seemingly add a new requirement to the statutory scheme. The General Assembly promulgated factors that courts must consider when deciding whether to transfer a case. We should not add to them.

Last, the majority's new approach runs counter to our precedent: "As stated previously, the trial court's finding on each factor need not be supported by clear and convincing evidence. Rather, *after considering all ten factors*, the trial court must determine whether there is clear and convincing evidence to try the juvenile as an adult." *Otis v. State*, 355 Ark. 590, 610, 142 S.W.3d 615, 626 (emphasis added). The majority here finds error on a factor not present in the statute, disagrees with the circuit court's interpretation, and then remands to the circuit court. Does this mean the case stays in adult court? Can the circuit court simply adopt the majority's speculation as to the manner and cause of death

---

[3]The circuit court noted that the juvenile had no prior criminal history, no significant signs of independence or maturity that would justify adult court, and decent grades and compliance with school-based educational therapy. The court noted DYS offered significant rehabilitative services and, as a form of confinement, constituted a punitive form of punishment. And an extended-juvenile-jurisdiction designation always offered the opportunity to convert to adult punishment. The court also considered the unsolicited letters that commented about the juvenile's good behavior while in detention.

and then reconsider it and still transfer? The majority doesn't say and instead creates more uncertainty.[4]

Recently, we reexplained "that the violent and serious nature of an offense alone *may* justify adult prosecution." *Rolfe v. State*, 2026 Ark. 4, at 10, 726 S.W.3d 589, 595 (emphasis added). But we also emphasized our deference to the circuit court, which must weigh all the evidence: "In sum, Rolfe's remaining challenge merely reflects disagreement with how the circuit court weighed the factors. We note that the court was entitled to weigh heavily the seriousness, violence, risk to public safety, and limited likelihood of rehabilitation." *Id.* We cannot state in January that circuit courts have discretion to weigh these factors, yet in April remove their discretion.

Because the majority's opinion misreads the circuit court's findings about the cause of death, seemingly adds a new factor to the statutory scheme, and disregards our precedent deferring to the circuit courts' weight of the statutory factors, I dissent.

HUDSON, J., joins.

*Tim Griffin*, Att'y Gen., by: *Brooke Jackson Gasaway*, Ass't Att'y Gen., for appellant.

*Brent P. Gasper* and *David Raupp*, Arkansas Public Defender Commission, for appellee.

---

[4]It is also of note that if the matter can still be transferred, we are running the clock on rehabilitation if we do not plainly say it. Instead, we leave open the real likelihood of another appeal.